**John C. McGUCKIN, Plaintiff–Appellant,**

v.

**Dr. SMITH, et al.; John C. Medlen, Dr., Defendants–Appellees.**

No. 90–16651.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 8, 1991 *.

Decided Aug. 24, 1992.

---

\* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and Ninth Circuit Rule 3(f).

**1052**

John C. McGuckin, pro se.

Bruce L. Skolnik, Asst. Atty. Gen., Tucson, Ariz., for defendant-appellee.

Tom Slutes, Slutes, Sakrison, Even, Grant & Pelander, Tucson, Ariz., for defendant-appellee.

Before: POOLE, REINHARDT, and FERNANDEZ, Circuit Judges.

REINHARDT, Circuit Judge:

John McGuckin, an Arizona state prisoner, brought a *pro se* 42 U.S.C. § 1983 action against several prison medical authorities at the Arizona Department of Corrections (ADOC) and Dr. John C. Medlen, a private orthopedic specialist who does consulting work for the ADOC. McGuckin alleged that the defendants were deliberately indifferent to his serious medical needs. The district court dismissed without prejudice his claims against defendants Dr. Dimitri Catsaros and Ron Buttram, and granted summary judgment in favor of defendants Dr. Theodore J. Smith and Dr. John C. Medlen. McGuckin appeals.

*Jurisdiction*

Although neither party has addressed the question, we are required to raise issues concerning our jurisdiction *sua sponte*. *See Abernathy v. Southern California Edison*, 885 F.2d 525, 527 (9th Cir. 1989). The dismissal of defendants Catsaros and Buttram was "without prejudice": if the dismissal did not constitute a "final decision[ ]" of the district court, then we do

not have jurisdiction over McGuckin's appeal. 28 U.S.C. § 1291.[1]

Final rulings generally "en[d] the litigation on the merits". *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); *see also Firstier Mortg. Co. v. Investors Mortg. Ins. Co.*, — U.S. —, — & n. 3, 111 S.Ct. 648, 651 & n. 3, 112 L.Ed.2d 743 (1991) (noting rule and exception). Usually, a dismissal without prejudice does not do so. "A dismissal without prejudice opens the door to a renewed contest. A dismissal with prejudice brings the contest to a close." *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1432 (9th Cir.1984).

However, the § 1291 "finality" inquiry is not necessarily dependent on whether the district court's action operates as an adjudication on the merits. For example, while dismissals based on lack of jurisdiction are not adjudications on the merits, they nevertheless are "final orders" and are appealable under § 1291. *See Rogers v. United States*, 902 F.2d 1268, 1269 (7th Cir.1990) (subject matter jurisdiction); *Reuber v. United States*, 773 F.2d 1367, 1368 (D.C.Cir.1985) (per curiam) (personal jurisdiction). Rather, the inquiry is whether the decision "ends the litigation and leaves nothing more for the court to do." *United States v. Lee*, 786 F.2d 951, 956 (9th Cir. 1986) (citing cases). "[A]n order which effectively sends a party out of court is appealable." *Id.; see also Herrington v. County of Sonoma*, 706 F.2d 938, 939 (9th Cir.1983) (same).

A district court's dismissal "without prejudice" may have one of two effects. First, the district court may intend to dismiss a currently-filed claim or complaint but permit the plaintiff to amend his complaint in the same action. In such a case, the district court does not " 'leave[ ] nothing for the court to do but execute the judgment' ", *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57

L.Ed.2d 351 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)), and the dismissal is ordinarily not appealable. *See Ordower v. Feldman*, 826 F.2d 1569, 1572 (7th Cir. 1987) ("If a district court's dismissal leaves a plaintiff free to file an amended complaint, the dismissal is not considered a final appealable order.") (citing cases). However, there is an important exception to that general rule: "if the plaintiff cannot cure the defect that led to dismissal or elects to stand on the dismissed complaint ... the order of dismissal is final and appealable." *Welch v. Folsom*, 925 F.2d 666, 668 (3d Cir.1991) (citing cases); *see also Ordower*, 826 F.2d at 1572 (same); *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1224 (9th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 2306, 119 L.Ed.2d 227 (1992). ("[A]ppellant is not required to amend in order to preserve his right to appeal. When one is granted leave to amend a pleading, she may elect to stand on her pleading and appeal, if the other requirements for a final, appealable judgment are satisfied.").

Alternatively, a dismissal without prejudice may be intended to end the litigation in the court involved but not to act as an adjudication on the merits or to bar the filing of a similar action in another court. Such a dismissal would be a "final" disposition and hence appealable. *See Production & Maintenance Employees Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1402 (7th Cir.1992) (citing cases); *Ordower*, 826 F.2d at 1572. The fact that the plaintiff could refile the action in *another* (state or federal) court—or in the *same* court in a new action—is irrelevant to the finality inquiry. *See In Re Establishment Inspection of Skil Corp.*, 846 F.2d 1127, 1129 (7th Cir.1988) (noting that dismissal "is appealable even if it is ancillary to a proceeding in another forum—even if it kicks off the

---

**1.** The dismissal of defendants Smith and Medlen was with prejudice: if they were the only defendants, appellate jurisdiction certainly would exist over that "final decision". However, because Smith and Medlen were defendants in the same action as Catsaros and Buttram, appellate jurisdiction with respect to any

defendant would not exist unless the dismissal was final to all. *See Frank Briscoe Co. v. Morrison-Knudsen Co.*, 776 F.2d 1414, 1416 (9th Cir. 1985); *Bullock v. Baptist Memorial Hosp.*, 817 F.2d 58, 59 (8th Cir.1987); *Brookens v. White*, 795 F.2d 178, 179–80 (D.C.Cir.1986) (per curiam).

proceeding in the other forum"); *see also Disher v. Information Resources, Inc.,* 873 F.2d 136, 139 (7th Cir.1989) ("The situation is different where, as in this case, the dismissal without prejudice winds up the litigation in the federal court system. True, the litigation continues in the state courts. But an order that ends litigation in one dispute-resolution system is final and appealable even though it kicks off litigation in another.") (citing cases).

The initial question, then, is whether the district court's "dismissal without prejudice" of defendants Catsaros and Buttram was intended to end the litigation against them in the present action or whether the district court intended to permit McGuckin to amend his complaint in that action prior to dismissal. In resolving this inquiry, although " 'the trial judge's characterization of his own action cannot control the classification of the action,' " *United States v. Scott,* 437 U.S. 82, 96, 98 S.Ct. 2187, 2196, 57 L.Ed.2d 65 (1978) (quoting *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (opinion of Harlan, J.)), the proper focus is on what effect the district court *intended* its order to have. *See Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511, 1514–15 (9th Cir.1987); *Hoohuli v. Ariyoshi,* 741 F.2d 1169, 1171 n. 1 (9th Cir.1984). We must "focus on the effect of the ruling rather than the label placed on it." *United States v. Lee,* 786 F.2d 951, 955 (9th Cir.1986).

In the present case, the record clearly demonstrates that the district court intended its dismissal of defendants Catsaros and Buttram to end McGuckin's litigation against those defendants in this action. McGuckin was not advised that he could amend his complaint prior to dismissal, nor was he given an opportunity to do so. *See infra* at 1055–57. Moreover, the district court's docketing sheet described the district court's judgment of September 25, 1990 as "terminating [the] case". In addition, in the district court's order of Septem-

ber 24, 1990, in which it dismissed McGuckin's claims against Catsaros and Buttram, the district court judge explicitly stated that "[a] formal Order will follow *for purposes of appeal*" (emphasis added), thus indicating that he felt that his involvement in the case was over and that an appeal from his "final decision" would be proper. There is no indication whatsoever that the district court felt that it had anything left to do other than to enter the judgment in the case, which it did on September 25, 1990. We therefore find that it rendered a "final decision" on that date. Accordingly, we have jurisdiction over McGuckin's appeal.[2]

## Defendant Catsaros

The district court dismissed McGuckin's claims against Catsaros pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that his complaint failed to state a claim upon which relief could be granted. McGuckin contends that the dismissal was improper because the district court did not give him a statement of the deficiencies of his complaint and an opportunity to amend prior to dismissal.

We review *de novo* the district court's dismissal of McGuckin's *pro se* complaint. *See Noll v. Carlson,* 809 F.2d 1446, 1447 (9th Cir.1987). His complaint was typed on a standard "form" for § 1983 actions given to incarcerated prisoners. McGuckin's complaint listed Catsaros as a party defendant and McGuckin caused him to be properly served with a summons and a copy of the complaint. Although only the caption of the complaint explicitly mentioned Catsaros by name, the body of the complaint contained allegations of deliberate indifference by "the entire medical department" of the prison. In addition, among other papers filed by McGuckin, his reply to the motions for summary judgment contained a paragraph entitled "Defendant Catsaros" which detailed McGuckin's claims against Catsaros, and his affidavit of August 23,

---

**2.** Because we hold as we do, we need not determine whether McGuckin's decision to appeal the district court's dismissal of defendants Catsaros and Buttram in effect was a decision to "stand on his complaint" and thus whether the

dismissal was appealable on that alternate ground. *See supra* at 1053 (noting appellate jurisdiction over dismissals without prejudice when plaintiff stands on his complaint or when amendment would be futile).

1990 extensively described Catsaros' involvement in McGuckin's treatment. The district court nevertheless dismissed McGuckin's claims against Catsaros "because plaintiff's complaint contains no allegations against him," despite simultaneously recognizing that "Plaintiff ... claims ... that defendant CATSAROS deliberately ignored Dr. Foote's diagnosis; that he refused to order a CT scan to confirm the diagnosis; and that he provided ineffective pain treatment to plaintiff."

■ Because "the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel," *Noll,* 809 F.2d at 1448, "[t]he Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." *Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir.1987) (quoting *Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982)). The law is clear that before a district court may dismiss a *pro se* complaint for failure to state a claim, the court must provide the *pro se* litigant with notice of the deficiencies of his or her complaint and an opportunity to amend the complaint prior to dismissal. *See Eldridge,* 832 F.2d at 1136; *see also Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992). We often have reversed the dismissal of a *pro se* litigant's complaint when the district court did not sufficiently explain the complaint's deficiencies to the *pro se* plaintiff prior to dismissal. *See, e.g., Karim-Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 625 (9th Cir.1988); *Eldridge,* 832 F.2d at 1136; *Noll,* 809 F.2d at 1449.

■ The court did not notify McGuckin of the complaint's asserted deficiencies before dismissing it, nor did it permit him to amend his complaint to rectify the omissions. If the district court believed that McGuckin was required to list his allegations against defendant Catsaros in the body of his complaint, it should have noti-

fied him of that requirement, informed him how to amend his complaint, given him the opportunity to do so, and explained to him the consequences of his failure to follow the district court's instructions. Had McGuckin been informed that he was required to amend his complaint so that it contained a brief statement of his allegations against Catsaros, there is no doubt that he could have done so. The dismissal of McGuckin's claims against Catsaros was therefore improper; accordingly, we reverse that ruling and instruct the district court to grant McGuckin leave to amend.

### Defendant Butlin/Buttram

McGuckin's complaint named "Ron Buttram" as a defendant and contained allegations against him. Unfortunately, although McGuckin had identified the proper person, the correct spelling of the defendant's last name turned out to be "Butlin". McGuckin, an incarcerated prisoner proceeding *pro se* and *in forma pauperis,* understandably was somewhat handicapped in his ability to properly serve the defendants in his lawsuit. Nevertheless, he did reasonably well. On January 16, 1990—74 days after he filed his complaint—he requested that a United States Marshal serve each of the defendants with a summons and copy of his complaint. McGuckin included detailed instructions designed to assist the Marshal to effect proper service.[3] His instructions with regard to service of one of the defendants was as follows: "Ron Buttram works in the health unit at Safford Prison—in the State Prison Complex at Safford, AZ. His home address is unknown—summons will have to be served through the warden, Earl Doudle, at [the address of the prison]." Despite these instructions, the Marshal could not locate "Ron Buttram" and returned the summons unexecuted.

---

**3.** For example, McGuckin provided the following statement to assist the Marshal to serve Dr. Smith: "Dr. Smith is the physician at Santa Rita Unit, State Prison. He is supposed to be at work from 8 in the morning until 4 in the afternoon although he is often late reporting.

His home address is not available. Server must call for the doctor to report to the front gate or front offices of the state prison as Santa Rita is fenced in and separate from the Admin. Section."

On March 1, 1990, Bruce Skolnik, an Arizona Assistant Attorney General, filed an answer and other papers in response to McGuckin's lawsuit. In these papers, Mr. Skolnik claimed to represent each of the defendants in McGuckin's action. Among other things, Skolnik's answer stated that "Defendants Medlen and Butler [sic] have not been served with process and should, therefore, be dismissed as Defendants pursuant to Rule 4(j), Federal Rules of Civil Procedure." [4] That statement is unlikely to become an exemplar in a textbook on proper pleading: defendant "Butler" referred to the defendant identified by the plaintiff as "Buttram"; the actual name of the defendant was "Butlin"; there was no person by the name of "Butler" involved; the 120–day period under Fed.R.Civ.P. 4(j) had not yet expired; and defendant Melden had been served several weeks prior to Skolnik's answer.

On March 20, 1990—over 120 days after McGuckin filed his complaint—the court ordered him to show cause why his claims against "Ron Buttram" should not be dismissed for failure to perfect service. That warning satisfied the notice requirement of Rule 4(j). *Cf. Smith–Bey v. Cripe,* 852 F.2d 592, 593–94 (D.C.Cir.1988) (holding improper *sua sponte* dismissal of *pro se* litigant's complaint under Rule 4(j) because notice was not given prior to dismissal); *Ruiz–Valera v. Sanchez Velez,* 814 F.2d 821, 823 (1st Cir.1987) ("A party can hardly enjoy an opportunity to 'show good cause why such service was not made within [the required] period' if that party has not been accorded notice that the matter has been put in issue."). The record does not reflect that McGuckin responded to that notice. On July 20, 1990, Skolnik reiterated his statement that he represented defendant Butlin, this time identifying him as "Ron Buttram" rather than "Butler" or "Butlin"; he then requested that "Buttram" be dismissed under Rule 4(j) for McGuckin's failure to perfect service. McGuckin filed a

response on September 4, 1990, that stated that "Ron Buttram" had not yet been served because the correct spelling of his last name was "Butlin," that McGuckin had learned this fact only as a result of recently propounded discovery, and that the Marshal had failed to serve Ronald Butlin as a result of the misspelling of Butlin's last name. McGuckin then reiterated his claims against Butlin and requested that Butlin not be dismissed "at this premature stage of the proceeding."

The district court found as a matter of fact that McGuckin's claims against "Ron Buttram" were intended to be against Ronald Butlin and that McGuckin had learned the correct spelling of Butlin's last name only during discovery and after the time for service had passed. The court then dismissed defendant Buttram/Butlin: the sole reason given by the court for its dismissal was its statement that it "dismissed defendant BUTTRAM because no such person exists."

 It is questionable whether the explanation given by the district court for that dismissal accurately described the basis for its action. The district court's order to show cause, for example, raised only the issue of whether McGuckin's claims against defendant Buttram/Butlin should be dismissed under Fed.R.Civ.P. 4(j) for his failure to perfect service within 120 days: nowhere did it mention that the claims might be dismissed because the defendant "does not exist." However, we generally take the district court's explanation for its action at its word, and we do so here. *Cf. Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir.1984) (noting that a district court's failure to provide the rationale for its decision generally requires a remand).

 Although there does not appear to be an explicit basis either in the Federal Rules of Civil Procedure or in federal statutes for the dismissal of a "nonexistent"

---

**4.** Rule 4(j) provides that "[i]f a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause

why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion."

defendant on that ground alone, it is likely that district courts have the authority to do so. For example, were a frustrated litigant to sue "Santa Claus" in federal court over the defendant's tortious failure to provide the plaintiff with certain requested Christmas presents, a district court might be permitted to dismiss the lawsuit.[5]

■ Here, however, we do not deal with the prototypical hypothetical defendant. It is undisputed that the individual McGuckin referred to by the term "Buttram" in his complaint *does* exist—the district court found (and McGuckin's instructions for service amply demonstrate, *see supra* at 1055 & n. 3) that "Buttram" was a misspelling of Butlin's last name. In addition, McGuckin properly spelled Butlin's first name and correctly identified his occupation, the location of his business address, the name of his supervisor, and his role in McGuckin's treatment. Moreover, although Butlin had not been personally served with a copy of the complaint, an attorney repeatedly appeared to represent Butlin's interests and claimed to be his counsel; indeed, the same attorney continues to claim to represent "Buttram" on appeal. The inability of an incarcerated *pro se* civil rights litigant to spell a defendant's name correctly—despite a plethora of indicia as to whom the named defendant refers—does not justify the dismissal of the complaint against that defendant.

■ Moreover, the district court's dismissal of defendant Buttram/Butlin is erroneous for another reason. The district judge failed to advise McGuckin that his complaint against that defendant was deficient and failed to provide him with an opportunity to amend the complaint. *See supra* at 1055 (noting that the district court informed McGuckin only of the possible violation of Rule 4(j) prior to dismissal). If McGuckin had been informed that he had misspelled Butlin's last name, he easily could have amended his complaint and remedied that deficiency. Reversal therefore is required for a second reason as well. *See supra* at 1054–55 (citing cases and reversing dismissal of defendant Catsaros on that basis).[6]

■ Despite the errors relating to the district court's "non-existent defendant" theory, we may nevertheless affirm its decision on a ground not relied upon below if the record clearly demonstrates that such a result is *required* as a matter of law. *See Patton v. County of Kings*, 857 F.2d 1379, 1381 (9th Cir.1988) (citing cases). If we find merely that the district court's *could* base its result on an alternate ground—but is not *required* to do so—we ordinarily do not affirm on that ground, because the district judge might *choose not* to base his result on that alternate ground. The general requirement that we remand rather than affirm except where the alternate ground mandates dismissal stems from our

---

5. Such a rule may be unnecessary: a defendant who truly "does not exist" presumably cannot be served and hence would be subject to dismissal for failure to perfect service pursuant to Rule 4(j). *See also infra* at 1057–58 (describing application of Rule 4(j) to the present case). Moreover, even if a judgment was obtained against an individual who did not exist, we imagine that the plaintiff would find it exceedingly difficult to collect any sums due from such a defendant. In addition, such a rule might instigate metaphysical disputes regarding the existence of any of the parties to a lawsuit. *Cf.* Rene Descartes, Meditation on First Philosophy, *reprinted in* 2 The Philosophical Writings of Descartes (translated by John Cottingham, Robert Stothoff, & Dugald Murdoch) (1984) (discussing the argument that everything we believe to exist is merely a dream of a higher being but

rejecting it on the basis of the proposition *cogito ergo sum* ).

6. A limited exception to the "notice" requirement exists when it is absolutely clear that the deficiencies in a complaint cannot be overcome by amendment. *See Eldridge v. Block*, 832 F.2d 1132, 1135–36 (9th Cir.1987). That exception is similar in purpose to our rule that we may affirm on a basis not relied upon below if it is clear that a litigant cannot overcome that alternate ground for the district court's decision. *See infra* at 1057 (describing rule and limitations). That exception is inapplicable here: there is no basis for concluding that defendant Buttram/Butlin should be dismissed as "non-existent" even if McGuckin were permitted to amend his complaint to spell Butlin's name properly. *See also infra* at 1057–58 (rejecting possible defense under Rule 4(j)).

deference to district court decisions that involve the exercise of discretion.

Appellees defend the district court's dismissal of Buttram/Butlin not on the ground that that defendant does not exist, but on the alternate ground that he was not served within the 120–day period generally required by Rule 4(j). Appellee's Rule 4(j) argument is unsound, for some of the same reasons the district court's ruling failed. Rule 4(j) states, in relevant part, that "[i]f a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show *good cause* why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice". (emphasis added).

 On the record before us, it is clear that McGuckin *can* show—in fact, has shown—"good cause" for his failure to serve defendant Buttram/Butlin within the 120–day period required by Rule 4(j). Ordinarily, the simple negligence of the plaintiff or his counsel is not an adequate excuse for failure to satisfy the 120–day service requirement of Rule 4(j).[7] However, courts must apply considerable leeway when assessing whether a *pro se* civil rights litigants' failure to comply strictly with time limits such as those established by Rule 4(j) should be excused for "good cause", *especially* when that litigant is incarcerated. *See Eldridge,* 832 F.2d at 1136–37. McGuckin's instructions to the U.S. Marshal were exceptionally detailed and—with the sole exception of the misspelling of Butlin's last name—entirely accurate. As the district court found, McGuckin learned the correct spelling of Butlin's last name only after the 120–day period under Rule 4(j) had expired, at which time he moved the court for additional time to serve the defendant. Moreover, the fact that McGuckin's failure to comply with Rule 4(j) was partially due to the fault of prison officials or the U.S. Marshal—individuals over whom McGuckin (as an incarcerated prisoner) had little control—might further militate in favor of a finding of "good cause".[8] Finally, the fact that a state's attorney individual repeatedly represented himself to be counsel to defendant "Buttram", and that there was an evident lack of prejudice to his client Butlin as a result of the delay in service, might provide further equities in McGuckin's favor.[9] In view of the totality of the circumstances, McGuckin has clearly demonstrated "good cause" for his failure to comply with Rule 4(j)'s 120–day requirement. *See* David Siegel, *Practice Commentaries,* 28 U.S.C.A. Rules 1–11 § C4–38 at 61 (1991 Supp. Pamph.) ("The legislative notes [to Rule 4(j)] indicate that if the plaintiff has made 'reasonable' efforts to effect service the court will 'undoubtedly' grant the time extension...."); *see also Gordon v. Hunt,* 116 F.R.D. 313, 319–320 (S.D.N.Y.1987) (citing and discussing numerous legislative and judicial sources to that effect), *affirmed,* 835 F.2d 452 (2d Cir.1987), *cert. denied,* 486 U.S. 1008, 108 S.Ct. 1734, 100 L.Ed.2d 198 (1988). In short, the record before us demonstrates conclusively that there was "good cause" for McGuckin's failure to serve Butlin within 120 days of the filing of his complaint.[10]

---

**7.** · *See Townsel v. County of Contra Costa,* 820 F.2d 319, 320 (9th Cir.1987); *United States ex. rel. DeLoss v. Kenner General Contractors, Inc.,* 764 F.2d 707, 709–711 (9th Cir.1985); *Wei v. State of Hawaii,* 763 F.2d 370, 371–72 (9th Cir. 1985) (per curiam).

**8.** *See Smith v. Sentry Insurance,* 674 F.Supp. 1459, 1461–63 (N.D.Ga.1987) (holding "good cause" present when failure to serve was due to negligence of process server).

**9.** *Compare Bryant v. Rohr Industries, Inc.,* 116 F.R.D. 530, 531–553 (W.D.Wash.1987) (holding that lack of prejudice to the defendant alone does not constitute "good cause" for an exception to the requirements of Rule 4(j)) *with Gordon,* 116 F.R.D. at 321 (noting conflict in cases but holding that prejudice—or lack thereof—is a factor in the determination of whether "good cause" exists).

**10.** We note that those same considerations might be relevant to a determination of whether Butlin was named as a defendant within the applicable statute of limitations and whether Butlin's misspelled name "relates back" to the time of the filing of the complaint.

The district court's decision to dismiss defendant Buttram/Butlin because he "did not exist" was erroneous. Moreover, McGuckin was not advised of the basis for the district court's dismissal of defendant Buttram/Butlin prior to the dismissal or given an opportunity to amend. Finally, Rule 4(j) does not provide a basis for affirming the district court's decision.[11] Accordingly, we reverse the district court's dismissal of defendant Buttram/Butlin.

*Defendants Smith and Medlen*

Unlike its action with regard to defendants Catsaros and Buttram/Butlin, the district court dismissed McGuckin's claims against defendants Smith and Medlen on the merits. The district court found that McGuckin had not established a genuine issue of material fact regarding whether either defendant was "deliberately indifferent" to his medical needs; it then granted summary judgment to Smith and Medlen. "We review a district court's grant of summary judgment *de novo. Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986). Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the party opposing the motion, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988).

"[T]he government has an obligation to provide medical care for those whom it punishes by incarceration," *id.*, and cannot be deliberately indifferent to the medical needs of its prisoners. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). "[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'" *Hudson v. McMillian*, — U.S. —, —, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992). The "[u]nnecessary and wanton infliction of pain" upon incarcerated individuals under color of law constitutes a violation of the Eighth

Amendment and is actionable under 42 U.S.C. § 1983. *Id.* "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson*, 838 F.2d at 394. However, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.* "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Gamble*, 429 U.S. at 106, 97 S.Ct. at 292.

■ A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, — U.S. at —, 112 S.Ct. at 1000. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain". *Gamble*, 429 U.S. at 104, 97 S.Ct. at 291. Either result is not the type of "routine discomfort [that] is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, — U.S. at —, 112 S.Ct. at 1000 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the

---

**11.** Although we affirm the district court's grant of summary judgment to defendants Smith and Medlen, *see infra* at 1059–63, we note that McGuckin's claims against Butlin may be

stronger than his claims against those defendants. Accordingly, we will not affirm on that alternate ground either.

presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *See, e.g., Wood v. Housewright,* 900 F.2d 1332, 1337–41 (9th Cir.1990) (citing cases); *Hunt v. Dental Dept.,* 865 F.2d 198, 200–01 (9th Cir.1989).

■ Once the prisoner's medical needs and the nature of the defendant's response to those needs have been established, a determination of whether "deliberate indifference" has been established can be made. The requirement of deliberate indifference is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because "[t]he State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns." *Hudson,* — U.S. at ——, 112 S.Ct. at 998. However, there are certain minimum requirements before deliberate indifference can be established. First, there must be a purposeful act or failure to act on the part of the defendant. "An *accident,* although it may produce added anguish, is not on that basis *alone* to be characterized as wanton infliction of unnecessary pain" sufficient to demonstrate deliberate indifference, *Gamble,* 429 U.S. at 105, 97 S.Ct. at 291 (emphases added), nor does "an *inadvertent* failure to provide adequate medical care" by itself to create a cause of action under § 1983. *Id.* A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established.

■ Second, when, as here, a claim alleges "mere delay of surgery," a prisoner can make "no claim for deliberate medical indifference unless the denial was harmful." *Shapley v. Nevada Board of State*

*Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir.1985) (per curiam). However, a finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, *see Wood,* 900 F.2d at 1339–40; *see also Hudson,* — U.S. at ——, 112 S.Ct. at 998–1000 (rejecting "significant injury" requirement and noting that the Constitution is violated "whether or not significant injury is evident"),[12] although a finding that the inmate was seriously harmed by the defendant's action or inaction tends to provide additional *support* to a claim that the defendant was "deliberately indifferent" to the prisoner's medical needs: the fact that an individual sat idly by as another human being was seriously injured despite the defendant's ability to prevent the injury is a strong indicium of callousness and deliberate indifference to the prisoner's suffering. *See Gamble,* 429 U.S. at 106, 97 S.Ct. at 292 (holding that a defendant's action or inaction could be "sufficiently harmful to evidence deliberate indifference to serious medical needs"); *Ortiz v. City of Imperial,* 884 F.2d 1312, 1313–14 (9th Cir.1989) (reversing summary judgment in part because inaction of doctors and nurses resulted in inmate's death).

■ Once those prerequisites are met, it is up to the factfinder to determine whether or not the defendant was "deliberately indifferent" to the prisoner's medical needs. A finding that the defendant's neglect of a prisoner's condition was an "isolated occurrence," *Wood v. Housewright,* 900 F.2d 1332, 1334 (9th Cir.1990), or an "isolated exception," *Toussaint v. McCarthy,* 801 F.2d 1080, 1111 (9th Cir.1986), to the defendant's overall treatment of the prisoner ordinarily militates against a finding of deliberate indifference. On the other hand, a finding that the defendant repeatedly failed to treat an inmate properly or that a single failure was egregious

---

**12.** In *Wood,* one member of the panel suggested that only delays in medical treatment that cause "substantial harm" violate a defendant's constitutional rights. *See Wood,* 900 F.2d at 1335 (opinion of Farris, J.). Two members of the panel explicitly rejected that suggestion. *See id.* at 1339–40 (opinion of Reinhardt, J.) (refuting assertion); *id.* at 1336 (opinion of Hug, J.) (join-

ing that portion of Judge Reinhardt's opinion); *see also id.* at 1336 (opinion of Reinhardt, J.) (noting that Section I of his opinion was joined by a majority of the panel). Because that is the rule of our circuit, we need not decide whether a contrary holding would be undercut by or conflict with the Supreme Court's decision in *Hudson.*

strongly suggests that the defendant's actions were motivated by "deliberate indifference" to the prisoner's medical needs. *See, e.g., Ortiz v. City of Imperial,* 884 F.2d 1312, 1313–14 (9th Cir.1989) (per curiam); *Hunt v. Dental Dept.,* 865 F.2d 198, 201 (9th Cir.1989). In sum, the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established "deliberate indifference" on the part of the defendant.

■ In the end, neither a finding that a defendant's actions are egregious or that they resulted in significant injury to a prisoner is required in order to establish a violation of the prisoner's federal constitutional rights and create a cause of action under § 1983. *Cf. Hudson,* —— U.S. at ——, 112 S.Ct. at 1001 ("The dissent's theory that [precedent] requires an inmate who alleges excessive use of force to show serious injury *in addition to* the unnecessary and wanton infliction of pain misapplies [precedent] and ignores the body of our Eighth Amendment jurisprudence.") (emphasis in original). While either finding provides great support for a claim that a defendant was "deliberately indifferent" to the inmate's medical needs, *"[r]egardless of how evidenced,* deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Gamble,* 429 U.S. at 105, 97 S.Ct. at 291 (emphasis added).

■ There is little doubt that the medical treatment received by McGuckin was far from ideal. McGuckin was originally injured in June of 1986 while he was an inmate at the Arizona State Prison Camp in Safford. He sought treatment for his injuries for over three-and-one-half years before the surgery required to correct his painful condition was performed in December of 1989 [13]—a condition that Dr. Ransom, who performed McGuckin's surgery, described as "dramatic" and as constitut-

ing "massive herniation" of McGuckin's back and upper torso. We shall not attempt to recount McGuckin's trials and tribulations with the prison medical establishment during that time. For purposes of this appeal, we are concerned only with the actions of Dr. Smith and Dr. Melden: there is no evidence that *these* individuals failed to perform their duties properly. The earliest contact McGuckin had with either of these individuals was in April of 1989—almost three years after his injury—at which time he was transferred to the Arizona State Prison Complex in Tucson. Dr. Smith examined him promptly upon his arrival, obtained and evaluated his medical history, and prescribed mild painkillers for a period of one month. McGuckin returned to see Smith on May 8th, at which time he complained that his pain was increasing and that the painkillers were of little help. Smith then requested consultation from Dr. Medlen, a private orthopedic specialist, who examined McGuckin on May 26th. Medlen concluded that McGuckin had possible radiculopathy; in order to rule out a herniated disk, Medlen recommended that either a CT scan or MRI be performed.

Despite McGuckin's condition and Dr. Medlen's diagnosis, a CT scan was not performed until August—almost three months after Medlen's examination. The CT scan revealed a herniated nucleus pulposus, and Medlen recommended that McGuckin be admitted for a myelogram and surgery. On August 23, 1989, the prison Outside Referral Committee approved Melden's request and assigned it a priority number of 5. Despite McGuckin's pain and clear need for surgery, months inexplicably passed without any further treatment of his condition. On October 26, 1989, McGuckin again visited Smith and complained that his pain continued to worsen. When, in mid-November, McGuckin was *still* waiting for surgery to be performed, he filed the present lawsuit. Finally, on December 8, 1989—over three months after Mr. McGuckin's medical need for surgery was unambig-

---

**13.** Indeed, McGuckin might have been forced to wait even *longer* for proper treatment had he not filed a § 1983 action in mid-November that, among other things, demanded the immediate treatment of his injuries. Less than three weeks after he filed his complaint, his injuries were surgically treated.

uously diagnosed and over three *years* after his original injury—surgery was performed and McGuckin's condition was successfully treated.

The vast majority of the delay in proper medical treatment for McGuckin occurred between 1986 and April 1989, a period during which defendants Smith and Medlen had no contact with nor medical responsibility for McGuckin. However, between April and December of 1989—a period in which McGuckin was under the care of both defendants—substantial additional delay occurred: delay that caused McGuckin to suffer a significant amount of pain and anguish. There is no doubt that McGuckin's pain and medical condition demonstrated his "serious medical need" and that the unnecessary continuation of his condition and pain caused him "harm" upon which a § 1983 claim can be based. *See supra* at 1059–60. None of the defendants has identified any reason whatsoever why McGuckin's CT scan and surgery were not performed promptly after his need for those services was unambiguously diagnosed. As a result, McGuckin's medical condition was left essentially untreated from April to December of 1989, and he was forced to endure over seven months of unnecessary pain.

Notwithstanding the seriousness of McGuckin's condition, we agree with the district court that he failed to raise a genuine issue of material fact regarding whether either Smith or Medlen was responsible for the delay in his treatment. There is no evidence that either doctor was responsible for the failure to promptly perform the CT scan: there is nothing in the record to demonstrate that either was responsible for the scheduling of such diagnostic examinations or that either in any way hindered its performance. The delay in surgery also does not appear to have been the fault of either Dr. Smith or Dr. Medlen. The evidence before the district court[14] suggests that a prison referral committee and prison administrators—not Smith or Medlen—were the ones who scheduled surgical treatments and were charged with ensuring that McGuckin's surgery occurred promptly. Although prison officials stated on November 3, 1989, in response to a grievance by McGuckin, that "Dr. Medlin [sic] is to determine when and if surgery is needed," that statement appears to mean only that surgery would be scheduled only if Dr. Medlen felt that it was appropriate—not that Medlen had the power to schedule McGuckin for surgery on a particular date.[15] That interpretation is consistent with statements made by both Smith and Medlen and a letter from Medlen to McGuckin on October 25, 1991, in which he stated that "[u]nfortunately, I have no significant jurisdiction over priorities concerning surgeries." In short, the evidence presented below does not provide a basis for a finding that either doctor was "deliberately indifferent" to McGuckin's medical condition. Accordingly, we affirm the grant of summary judgment to Dr. Smith and Dr. Medlen.

*Conclusion*

In many ways, this case, like *Wood v. Housewright*, 900 F.2d 1332 (9th Cir.1990), exemplifies both the problems confronted by incarcerated *pro se* litigants and the shortcomings of our response to their unique needs. As did *Wood*, McGuckin may well have a valid claim under § 1983 that his federal constitutional rights were violated by his woefully inadequate medical treatment during the time he was incarcerated. It is likely, however, that procedural errors made by McGuckin—like those made by Wood—will doom his efforts to be compensated (however minimally) for that deprivation or for the pain he suffered for over three years. Unfortunately, without appointed representation, McGuckin will un-

---

14. McGuckin contends that Dr. Smith's affidavit improperly includes information that is not within his personal knowledge. *See* Fed. R.Civ.P. 56(e). However, we need only consider the statements in Dr. Smith's affidavit for which he has personal knowledge in order to uphold the district court's decision to grant summary judgment to Dr. Smith and Dr. Medlen.

15. If prison officials misled McGuckin as to who was in charge of scheduling his medical treatment or otherwise failed in their responsibility to ensure that McGuckin was promptly treated, those officials may be liable under § 1983; however, no such defendant is named in the present lawsuit.

doubtedly not be the last *pro se* civil rights litigant to fall victim to procedural pitfalls.[16]

We reverse the dismissal of McGuckin's claims against defendants Catsaros and Butlin, affirm the grant of summary judgment to defendants Smith and Medlen, and remand the case to the district court.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

FERNANDEZ, Circuit Judge, concurring:

I agree with the result reached in the majority opinion. However, my agreement is only to the propositions specifically set forth in this concurrence, and not to the more expansive and additional propositions contained in that opinion.

First, I do agree that we have jurisdiction over this case because, as the majority points out, it is absolutely clear that the district court intended to and did dispose of the entire case when it entered its judgment of September 25, 1990. That is so, despite the fact that the judgment itself is ambiguous in form.

Second, as to Catsaros and Butlin, I agree that the district court should not have dismissed the action without first issuing an order explaining the problems in the complaint and giving McGuckin an opportunity to amend to correct those deficiencies. *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987). I am not, however, willing to declare that McGuckin will or will not be able to correct the deficiencies as to Catsaros. I would leave that to McGuckin and to the district court's determination. I am also not willing to declare that amendments to name Butlin will be effective to make him a party to this action. I would leave to the district court the determination of whether the use of what was probably an incorrect name will avoid

any statute of limitations problems. *See* Fed.R.Civ.P. 15(a). I would also leave the determination of the sufficiency of the pleading and the question of whether good cause was shown for the failure to serve within 120 days to the district court. Fed. R.Civ.P. 4(j).

Third, with respect to doctors Smith and Medlin, I agree that summary judgment was proper. Under no proper reading of the concept of deliberate indifference could they be found to have violated that constitutional standard. *See Estelle v. Gamble*, 429 U.S. 97, 98–105, 105 n. 10, 97 S.Ct. 285, 288–291, 291 n. 10, 50 L.Ed.2d 251 (1976) (deliberate indifference standard set forth and examples of deliberate indifference given); *cf. City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (at times the need for training is so obvious and the lack so likely to lead to constitutional violations that there is deliberate indifference).

Finally, I do not join in any suggestion that under the facts of this case any person, or the prison system itself, is guilty of deliberate indifference or other misconduct. It may be that they are, but I would not allude to any of those matters. Nor would I set out detailed statements regarding the "facts" lest they be taken to be established on remand. I would leave all of these matters to the determination of the district court after it has had an opportunity to review all of the evidence. I would also make it clear that to the extent that facts are referred to, those references are not intended to be factual decisions which cannot be further explored or controverted on remand.

Thus, I concur in the result.

---

**16.** Even a first-year law student could have informed McGuckin of the need to ensure that Butlin's name was spelled correctly, to see that he was properly served, and to describe the claims against Catsaros in the body of the complaint as well as elsewhere. If such assistance had been rendered, much of the time and effort expended both here and in the district court could have been rendered unnecessary. Per-

haps more important, an individual with even minimal legal skills could have emphasized the need for McGuckin to name the prison officials *responsible* for the delays in his medical treatment (rather than merely his four primary medical caregivers) as defendants in his lawsuit. *Cf. supra* at 1061–63 (noting that the individuals who were in charge of scheduling McGuckin's surgery were not named as defendants).