5 F.3d 537
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 James D. MACIEL, Plaintiff-Appellant,
v.
James K. ROWLAND, individually and as Director of the Dept.
of Corrections, State of California; Eddie Ylst,
et al., Defendants-Appellees.
 No. 92-16136.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 23, 1993.*
Decided Sept. 2, 1993.
 
 Appeal from the United States District Court for the Eastern District of California, No. CV-88-01149-GEB; Garland E. Burrell, District Judge, Presiding.
 E.D.Cal.
 AFFIRMED.
 MEMORANDUM**
 Before PREGERSON, BRUNETTI and RYMER, Circuit Judges.
 
 
 1
 James D. Maciel appeals pro se the district court's judgment on partial findings in his 42 U.S.C. Sec. 1983 action. The district court held that Maciel failed to establish a prima facie case showing his constitutional rights were violated when he was transferred to New Folsom State Prison (Folsom) from the California Medical Facility (CMF). Maciel contends defendants violated his eighth and fourteenth amendment rights by transferring him to a non-medical facility following his treatment at CMF because they were aware that his chronic and severe medical condition required him to be at a medical facility. On appeal, Maciel contends the district court erred by (1) granting judgment for certain named defendants, (2) deciding Maciel's action without ascertaining which of two consolidated actions defendants referred to in their motion for judgment and, (3) denying Maciel's motion to continue the trial. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.[1]
 
 
 2
 * Background
 
 
 3
 Maciel suffered multiple gunshot wounds in 1968. Bullet fragments from those wounds remain lodged in his lower back near his spine and pelvic region. On December 1, 1986, while housed at Folsom, Maciel was examined by Dr. Textor for extreme back pain. Textor prescribed medication for Maciel and recommended that Maciel be permanently medically unassigned.[2] Textor sent Maciel's medical records to the Chief Medical Officer for evaluation regarding transfer to a medical facility. Maciel was treated for back pain again in February and March of 1987. Textor again suggested to the Chief Medical Officer that Maciel be transferred to a medical facility.
 
 
 4
 On October 7, 1987, Maciel was treated by Dr. Rufino. Rufino prescribed medication for Maciel and issued orders that Maciel could sleep on the lower tier of a bunk bed. Rufino also issued a six month "chrono" classifying Maciel as medically unassigned.
 
 
 5
 On December 14, 1987, Maciel was transferred from Folsom to CMF with the understanding that he would be returned to Folsom after he received treatment. At CMF, Maciel was given heat and whirlpool treatments in order to ease his pain.
 
 
 6
 On December 22, 1987, the Unit Classification Committee recommended Maciel be returned to Folsom because of overcrowding at CMF. Maciel was not transferred, however, because of renewed back pain he suffered on January 17, 1988. A neurologist examined Maciel and recommended his medication be doubled, he be classified as permanently medically unassigned, and he receive physical therapy. On June 3, 1988, Maciel was examined by Dr. Bray. Bray also recommended that Maciel be classified as permanently medically unassigned, with access to physical therapy as necessary.
 
 
 7
 On June 21, 1988, the Classification Committee again recommended Maciel be transferred back to Folsom. Maciel protested and got treating physicians to recommend that he remain at CMF and retain his medically unassigned status. On September 14, 1988, however, a physical therapist determined that Maciel no longer required physical therapy and authorized Maciel's transfer back to Folsom. On that basis, Dr. Brown signed a chrono authorizing Maciel's transfer to any facility.
 
 
 8
 On September 26, 1988, however, Maciel suffered extreme pain in his right leg. A doctor advised that Maciel be admitted to the hospital. When Maciel returned to his cell to collect his belongings, he apparently had a confrontation with Correctional Officer Kiley regarding care of his belongings during his absence. Kiley scattered Maciel's belongings in the hallway. As a result, Maciel postponed his admittance to the hospital until the following day. Upon admittance, Maciel was placed in intravenous medication. On October 3, 1988, Maciel was examined by Dr. Bourne who continued the intravenous medication for another day and then released Maciel to his unit in CMF. On October 6, 1988, Maciel allegedly suffered chest pain and difficulty breathing. The library officer requested assistance, but the medical staff declined to assist Maciel and the library officer escorted Maciel to the hospital.
 
 
 9
 On October 11, 1988, Maciel reappeared before the Classification Committee, which again recommended his return to Folsom. Maciel was transferred back to Folsom State Prison on October 19, 1988. He was treated there by Dr. Meyer, who recommended Maciel be transferred to a medical facility. Dr. Textor, Chief Medical Officer at that time, declined to approve the transfer.
 
 
 10
 Maciel filed this action against defendants Textor, Meyer, Rufino, Brown, Bourne, Kiley and the medical Departments at Folsom and CMF. Maciel asserts his eighth amendment rights were violated by defendants because they allowed him to be transferred from a medical prison facility to a non-medical facility despite the gravity of his medical condition.
 
 
 11
 * Judgment on Partial Findings
 
 A. The Doctors
 
 12
 On appeal, Maciel contends the district court erred by granting defendants' motion for judgment on partial findings pursuant to Rule 52(c). This contention lacks merit.
 
 
 13
 We review the district court's dismissal of an action pursuant to Fed.R.Civ.P. 52(c) the same as a judgment after a bench trial. Sepulveda v. Pacific Maritime Ass'n, 878 F.2d 1137, 1139 (9th Cir.), cert. denied, 493 U.S. 1002 (1989).[3] We review the district court's legal findings de novo and the court's findings of fact for clear error. Id.
 
 
 14
 Under Rule 52(c), a district court presiding over a bench trial may involuntarily dismiss an action if the court finds the plaintiff is unable to establish a prima facie case. Id. Even if the plaintiff has established a prima facie case, the court may dismiss the action if the court is persuaded the preponderance of the evidence lies in the defendants' favor. Johnson v. United States Postal Serv., 756 F.2d 1461, 1464 (9th Cir.1985).
 
 
 15
 Prison officials violate an inmate's eighth amendment rights if they exhibit deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992). The court must examine both the "seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin, 974 F.2d at 1059. Simple malpractice, or even gross negligence, without more, does not constitute "deliberate indifference." Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990). Deliberate indifference requires a showing of purposeful neglect on the part of the prison officials. McGuckin, 974 F.2d at 1060. A difference in medical opinion between a prisoner-patient and a prison doctor or between doctors does not give rise to a section 1983 claim. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.1981). Moreover, where the allegation involves delay of medical care, the delay must have caused harm. McGuckin, 974 F.2d at 1060.
 
 
 16
 Maciel failed to establish that the doctors treated him with deliberate indifference. See id. The record shows that the doctors each treated Maciel's medical condition seriously, recommending the care each doctor thought necessary. The fact that some doctors thought Maciel should be transferred to a medical facility and that others disagreed does not demonstrate deliberate indifference. See Franklin, 662 F.2d at 1334. Thus, the district court correctly granted judgment for the doctors because Maciel failed to establish a prima facie case against them. See Sepulveda, 878 F.2d at 1139.
 
 B. Officer Kiley
 
 17
 Maciel apparently contends Officer Kiley violated his eighth amendment rights by scattering his property in the hall, thus forcing Maciel to postpone medical treatment until the following day. This contention lacks merit.
 
 
 18
 Maciel did not demonstrate a violation of his eighth amendment rights: even if he could show that Kiley's actions forced him to delay seeking medical treatment, he did not demonstrate he suffered any harm from that delay. See Wood, 900 F.2d at 1335.[4]
 
 C. Medical Departments
 
 19
 Maciel further contends the district court erred by granting judgment on partial findings for the medical departments at Folsom and at CMF. This contention lacks merit.
 
 
 20
 Governmental entities which qualify as "arms of the state" under the eleventh amendment are not considered "persons" for purposes of section 1983. Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir.1989). The medical department of a state prison or medical institution is clearly an "arm of the state." Thus, the district court properly granted judgment for the medical departments at Folsom and CMF. See Sepulveda, 878 F.2d at 1139.
 
 III
 Consolidation of Actions
 
 21
 Maciel contends the district court erred by dismissing his action because the district court failed to require defendants to specify in which of the two actions consolidated for trial they sought judgment.
 
 
 22
 Here, Maciel filed his first action alleging violations of his eighth and fourteenth amendment rights and seeking declaratory and injunctive relief and damages on September 7, 1988. See Maciel v. Rowland, No. CV-88-1149 GEB. Maciel filed a second action on October 7, 1989, alleging the same violations, seeking similar remedies, and naming additional defendants. See Maciel v. Rowland, No. CV-89-1429 GEB. On January 21, 1992, the court consolidated the two actions for trial. See Fed.R.Civ.P. 42(a); In re Adams Apple, Inc., 829 F.2d 1484, 1487 (9th Cir.1987). Defendants moved for judgment as a matter of law on April 29, 1992. Defendants specifically moved the court to consider the motion: "with respect to all of the issues in the case, relative to all the defendants," "in regards to the individual defendants and what's been shown to be their conduct" and "whether or not they are immune from any damages." Thus, defendants made clear to the court that they sought judgment with regard to all claims as to all defendants in the consolidated action. Accordingly, the district court did not err by failing to require defendants to specify in which action they sought judgment and by granting judgment for defendants. See Johnson, 756 F.2d at 1464.
 
 IV
 Motion to Continue
 
 23
 Maciel contends the district court abused its discretion by denying his motion to continue the trial. Maciel contends he was unable to prepare adequately for trial without a continuance because he was intermittently deprived of his legal materials and not allowed adequate time in the law library. This contention lacks merit.
 
 
 24
 We review a district court's grant or denial of a continuance for abuse of discretion. United States v. Flynt, 756 F.2d 1352, 1358 (9th Cir.), amended on other grounds, 764 F.2d 675 (1985). The district court has not abused its discretion by denying a motion for a continuance unless the court's decision was arbitrary or unreasonable. Id.
 
 
 25
 We examine four factors in reviewing a district court's denial of a continuance: (1) the plaintiff's diligence in preparing for the hearing or trial (2) whether granting the continuance would have met the need for a continuance, (3) the inconvenience to the court and the opposing parties, and (4) the harm plaintiff suffered as a result of the denial. Id. at 1358-59. We will not reverse a district court's denial of a motion for a continuance unless the plaintiff has shown that he was prejudiced by the denial. Id.
 
 
 26
 Here, on February 14, 1992, Maciel was transferred from the California Correctional Institute to the California Rehabilitation Center. According to Maciel, he was deprived of his legal documents from the time of his transfer until February 21, 1992. He was allegedly deprived of his legal materials again from March 18, 1992 until April 20, 1992 at least in part because he was transferred to Deuel Vocational Institute (DVI) on April 7, 1992. On April 20, 1992 Maciel concedes he received several boxes containing his documents. According to Maciel, however, many of the documents related to this action were missing from the boxes. On April 22, 1992, Maciel received several more boxes of legal materials. Maciel alleges many important documents were missing from these boxes as well. Finally, Maciel alleges that he was only allowed ten hours of library time in his first thirteen days at DVI, and that he was allowed only forty-five minutes in the following ten day period.
 
 
 27
 On April 17, 1992, the court confirmed April 28, 1992 as the trial date for Maciel's action. On April 28, 1992, Maciel appeared for trial and moved for a continuance on the ground that he did not have the necessary documents to proceed with trial. The court denied Maciel's motion for a continuance. On April 29, 1992, Maciel concluded the presentation of his case and defendants moved for judgment. The court granted defendants' motion for judgment on May 14, 1992, and dismissed the action.
 
 
 28
 Although the district court denied Maciel's motion for a continuance, the court did not do so until it had meticulously addressed and rejected each of Maciel's arguments as to why he should be granted a continuance. Thus, the district court did not abuse its discretion by denying Maciel's motion for a continuance. See Flynt, 756 F.2d at 1358.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On February 2, 1993, Maciel filed a motion to file Exhibits A-L in support of his opening brief. On March 25, Maciel filed a motion to file Exhibits A-D in support of his reply brief. We grant both of these motions
 
 
 [2]
 A prisoner who is medically unassigned is free from work obligations
 
 
 [3]
 Effective December 1, 1991, Rule 52(c) replaced Rule 41(b). Thus, although many of the cases we rely on refer to Rule 41(b), we refer consistently to Rule 52(c) for the sake of clarity
 
 
 [4]
 Although Macial does not appear to raise a deprivation of property claim, he did not demonstrate Kiley violated his fourteenth amendment rights. "An unauthorized deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Here, Maciel could have pursued this complaint through the prison, the State Board of Control, and small claims court. See id. Maciel did none of that