53 F.3d 338
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Duane McMICAN, Plaintiff-Appellant,
v.
Samuel A. LEWIS, et al., Defendants-Appellees.
 No. 94-16676.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 19, 1995.*
Decided April 27, 1995.
 
 Before: BROWNING, SNEED, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Duane Everett McMican, an Arizona state prisoner, appeals pro se the district court's summary judgment in favor of prison officials and medical staff members of the Arizona Department of Corrections ("ADOC") facility at Cimarron, in McMican's 42 U.S.C. Sec. 1983 action alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * Summary Judgment
 
 
 4
 We review the district court's summary judgment de novo. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). A grant of summary judgment should be affirmed only if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); McGuckin, 974 F.2d at 1059. To defeat a summary judgment motion, the nonmoving party must come forward with evidence sufficient to establish the existence of any elements that are essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 
 5
 McMican contends the district court erred by ruling that the ADOC were not deliberately indifferent to McMican's serious medical needs. This contention lacks merit.
 
 
 6
 "Prisoners can establish an eighth amendment violation with respect to medical care if they can prove there has been deliberate indifference to their serious medical needs." Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 302 (1991). The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. Estelle, 429 U.S. at 106; Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A difference of opinion about treatment does not amount to deliberate indifference to serious medical needs. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Moreover, a mere delay in medical treatment, without resulting harm, is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).
 
 A. Treatment and Medication
 
 7
 McMican alleged the defendants exhibited deliberate indifference to his serious medical needs by delaying his medical treatment for painful lipomas, which are fatty benign tumors, and by failing to provide adequate pain medication. The record, however, shows the defendants neither purposely ignored nor failed to respond to McMican's medical needs. See McGuckin, 974 F.2d at 1060.
 
 
 8
 After his transfer to the ADOC facility at Cimarron, McMican was seen by ADOC medical staff on a regular basis. McMican was referred to Dr. Ruben Acosta, M.D., who contracted with the ADOC to provide surgical services. Dr. Acosta examined and treated McMican in March 1991; and in January, February, April, May, July, and August of 1992. He performed surgery on McMican three different times to remove the lipomas. Two other surgeries were performed on McMican as well.[1] Although McMican complained of some delay in surgical treatment, there is no indication that his condition became worse as a result of the delay. See Estelle, 429 U.S. at 104. McMican also was given a supply of analgesics on a regular basis to diminish his pain. Although he disagreed with the type of pain medication he received, such disagreement is insufficient to give rise to a constitutional claim. See Sanchez, 891 F.2d at 240.
 
 B. Removal of Gloves
 
 9
 McMican failed to demonstrate that the defendants were deliberately indifferent to his serious medical needs by taking his gloves from him. On December 6, 1991, McMican requested that a pair of gloves be issued to him because they increased the circulation of blood in his hands in cold weather. ADOC medical personnel issued the gloves to McMican on January 2, 1992, less than one month after he made his request. The gloves were taken away in April 1992, after defendant R. Rickelman, a Certified Physician's Assistant, noted on McMican's chart that the gloves were no longer medically indicated. On January 26, 1993, McMican requested a second pair of gloves and a pair was reissued on February 2. McMican contends that the gloves should have never left his possession. McMican's insistence that he should have retained the gloves is another difference of opinion as to the type of treatment he required which does not amount to a constitutional violation. See Sanchez, 891 F.2d at 240.
 
 C. Temporary Refusal of Pain Medication
 
 10
 McMican also failed to demonstrate that defendant D. Lucero, R.N., was deliberately indifferent to his medical needs when Lucero refused to administer pain medication for a week. The record indicates that Lucero did not give McMican pain medication after he requested it because it was not indicated on his chart that he should receive it. After an investigation by Lucero determined that the medication was needed, the pain reliever was issued. Lucero's temporary refusal to give McMican medication was at most a mistake based on an error in McMican's chart, not a demonstration of deliberate indifference. See Estelle, 429 U.S. at 106; Wood, 900 F.2d at 1334.
 
 
 11
 D. Consideration of Claims Against All Defendants
 
 
 12
 McMican contends that the district court failed to rule on his claims against certain defendants. Although the district court did not discuss the allegations as to each defendant, the record indicates that McMican received constant, proper medical treatment and that none of the defendants were deliberately indifferent to his medical needs. Moreover, when the district court granted the motion for summary judgment, all the defendants were included in the ruling. Therefore, the district court did not err by not addressing each claim as to each defendant when it granted summary judgment.
 
 II
 Motion for Additional Testing
 
 13
 McMican also contends that the district court erred by denying his motion to appoint an independent medical expert to conduct tests on his tumors. This contention lacks merit.
 
 
 14
 The district court has the discretionary power to appoint an expert. See Students of California School for the Blind v. Honig, 736 F.2d 538, 549 (9th Cir. 1984), vacated and remanded on other grounds, 471 U.S. 148 (1985). McMican's tumors were tested twice by different independent pathology laboratories. The first biopsy was conducted on June 25, 1991, and the second was conducted on February 28, 1992, after Dr. Acosta had removed twenty-one of McMican's lesions. Both laboratories determined that the tumors were lipomas. McMican's dissatisfaction with these determinations reflect no actionable difference of opinion with the ADOC medical staff regarding the nature of his tumors, which he contends are neurofibromatosis. See Sanchez, 891 F.2d at 242. Because McMican had previously received two independent evaluations of his tumors, the district court did not err by denying McMican's motion to appoint a medical expert for independent testing of McMican's tumors.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The record shows that surgery to remove lipomas is elective and done on an outpatient basis