**Antonio Cortez BUCKLEY, Plaintiff,**

**v.**

**James H. GOMEZ, et al., Defendants.**

**No. Civ. 95–2372–BTM(JFS).**

United States District Court,
S.D. California.

Oct. 8, 1997.

Antonio Cortez Buckley, pro se.

Robert F. Helfand, San Diego, CA, for defendants.

MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [35–1]; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [51–1], [56–1].

STIVEN, United States Magistrate Judge.

A hearing on Defendants' Motion to Dismiss was held on **July 31, 1997,** and a hearing on Defendants' Motions for Summary Judgment was held **August 14, 1997,** before the Honorable James F. Stiven, United States Magistrate Judge. Plaintiff Antonio Cortez Buckley, pro se, appeared telephonically, and Mr. Robert F. Helfand, Deputy Attorney General of the State of California, appeared in court representing the Defendants.

## I. *Procedural History*

On September 28, 1995, Plaintiff filed a federal civil rights complaint against seven Defendants: James H. Gomez, Director of the California Department of Corrections ("CDC"); K.W. Prunty, Calipatria Warden; J. Variz,[1] Calipatria Correctional Officer ("C/O"); J.J. Scott, Calipatria C/O; L. Ricks, Calipatria C/O; Bender, Calipatria C/O; and R. Goodard, Calipatria C/O. On December 5, 1995, Plaintiff filed an Amended Complaint against the same previously-named Defendants.

Defendants Gomez, Prunty, and Goodard have renewed their motions to dismiss based on Fed.R.Civ.P. 12(b)(6), pursuant to the Order by District Judge Moskowitz, dated February 20, 1997. Judge Moskowitz therein denied Defendants' Motions to Dismiss Plaintiff's Amended Complaint without prejudice and with leave to renew the motions without filing new papers should the Plaintiff be denied leave to amend. Plaintiff and Defendants executed a consent form, filed on May 8, 1997, in accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, stipulating to have Magistrate Judge James F. Stiven conduct all further proceedings in the case, including the trial of this action and all pending motions. Leave to amend was denied by this Court by Order filed May 13, 1997.[2] On July 3, 1997, Defendants Scott, Ricks, and Goodard filed a Motion for Summary Judgment. On July 8, 1997, Defendant Bender filed a Motion for Summary Judgment.[3]

## II. *Legal Standards*

### A. *Pro Se Pleadings*

■ A pro se litigant is more likely to make errors in pleadings than counsel. *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987). The allegations in Buckley's complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Id.* (citing *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972)).

### B. *Heightened Pleading*

The Ninth Circuit has adopted a heightened pleading standard for certain claims. Where subjective intent is an element of the constitutional claim, plaintiffs must state "nonconclusory allegations of subjective motivation, supported either by direct or circumstantial evidence...." *Branch v. Tunnell,* 937 F.2d 1382, 1387 (9th Cir.1991), *aff'd,* 14 F.3d 449 (9th Cir.1994), *cert. denied,* 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994). "[B]are allegations of improper purpose are insufficient...." *Id.* at 1386.

### C. *Failure to State a Claim*

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to seek dismissal of a complaint of "failure to state a claim upon which relief an be granted." Dismissal is proper where it appears beyond a

---

1. Despite this Court's Order [58–1] of Confidentiality directing service on Defendant Variz, there is no evidence in this Court's record showing Defendant Variz has been served.

2. District Judge Moskowitz referred Plaintiff's Motion to Magistrate Judge Stiven for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). *See U.S. Dominator v. Factory Ship Robert E. Resoff,* 768 F.2d 1099, 1102 n. 1 (9th Cir.1985).

3. Plaintiff's Opposition was entitled, "Plaintiff Motion and Notice of Motion Opposing Defendant's Motion". To the extent Plaintiff intended to file a Motion for Summary Judgment, his Motion is **DENIED** for the reasons set forth in this Decision.

doubt that Plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In determining the plaintiff cannot prove any set of facts which would entitle him to relief, the court must assume the allegations in the complaint are true and draw all reasonable inferences in plaintiff's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). However, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir.1982); *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir.1992).

### D. *Summary Judgment*

A party moving for summary judgment is "entitled to judgment as a matter of law because the nonmoving party has failed to make sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986.) A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). The opposing party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. If a nonmoving party bears the burden of proof at trial, he must establish each element of his claim with "significant probative evidence tending to support the complaint." *Barnett v. Centoni,* 31 F.3d 813, 815 (9th Cir.1994) (citations omitted).

■ Cross-motions for summary judgment do not necessarily mean that there are no disputed issues of material fact, and do not necessarily permit the judge to render judgment in favor of one side or the other. *Starsky v. Williams,* 512 F.2d 109, 112 (9th Cir.

1975). The Court must consider each motion separately to determine whether any genuine issue of material fact exists. *Id.* A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Although pro se pleadings are construed liberally, pro se litigants are nonetheless bound by the rules of procedure. *Ghazali v. Moran,* 46 F.3d 52, 54 (9th Cir.1995).

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *rev'd on other grounds, Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir.1985) (en banc), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). Here, there appears to be no dispute that Defendants, all employees of the California Department of Corrections, acted under color of state law when they allegedly violated Plaintiff's constitutional rights. Thus, this case turns on the second inquiry: whether Defendants wrongfully deprived Plaintiff of any constitutional rights.

Viewing these facts, in turn, in the light most favorable to the non-moving party, the Court finds that certain of Plaintiff's submissions would be unpersuasive to a rational trier of fact. The existence of a "scintilla" of evidence is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Mere allegations are not enough. Plaintiff must offer evidence based upon which a jury could reasonably

find in his favor on the merits. *Id.* Here, Plaintiff has not met his burden with respect to many of his claims; however, as stated below, some claims by Plaintiff do survive this stage of the action.

## III. *Discussion*

### A. *Respondeat Superior*

Plaintiff claims Defendants Gomez and Prunty covered up and conspired to cover up alleged incidents of harassment (by correctional officers) by denying the grievances filed by Plaintiff.

■ A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978). There is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson,* 9 F.3d 1433, 1437–38 (9th Cir.1993). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *See Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir.1988); *Berg v. Kincheloe,* 794 F.2d 457, 460 (9th Cir.1986).

■ Thus, to avoid section 1983's respondeat superior bar, the plaintiff must allege personal acts by the defendants which have a direct causal connection to the constitutional violation at issue. *Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir.1991) (en banc), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992); *see Sanders v. Kennedy,* 794 F.2d 478, 483 (9th Cir.1986); *Whitford v. Boglino,* 63 F.3d 527, 530–31 (7th Cir.1995). At a minimum, this requires an allegation that the defendant ordered, knew of or consented to the alleged violation. *Whitford,* 63 F.3d at 530–31. These allegations are absent from Plaintiff's complaint. Further, Plaintiff fails to specifically allege an intent by Defendants to conspire against him for submitting grievances against prison staff or being an African-American Hebrew, and fails to provide specific allegations that either Gomez or Prunty condoned any of the alleged actions of the CDC employees named in the complaint. Moreover, at oral argument, Plaintiff acknowledged he had no further specific allegations of respondeat superior or conspiracy against Gomez or Prunty.

■ The *Branch* heightened pleading standard has been applied to conspiracy. *Foster v. Skinner,* 70 F.3d 1084 (9th Cir. 1995). To recover under a conspiracy theory, plaintiff's complaint must contain specific factual allegations to support a theory of conspiracy. *Uston v. Airport Casino, Inc.,* 564 F.2d 1216, 1217 (9th Cir.1977). Where a complaint contains merely conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights, it must be dismissed. *Hobson v. Wilson,* 737 F.2d 1, 30 (D.C.Cir.1984) (quoting *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977)).

Plaintiff's conclusory allegations fail the heightened pleading standard under *Branch, supra.* Therefore, because Defendants cannot be held liable merely for occupying supervisory positions, and Plaintiff has failed to make specific factual allegations to demonstrate that Defendants acted or failed to act resulting in the alleged constitutional violations, his attempt to impose liability on the basis of Defendants' supervisory positions fails, thus Defendants Gomez and Prunty are **DISMISSED WITH PREJUDICE.**

### B. *Name–Calling*

■ Plaintiff alleges Defendants verbally abused him. For instance, Plaintiff alleges C/O Goodard came to his cell on March 21, 1994, and kicked his mail under his cell door while calling Plaintiff a "Jew Boy". Although courts do not condone name-calling, "the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons." *Somers v. Thurman,* 109 F.3d 614, 622 (9th Cir.1997), *petition for cert. granted,* — U.S. —, 118 S.Ct. 143, 139 L.Ed.2d 90 (1997) (quoting *Morgan v. Ward,* 699 F.Supp. 1025, 1055 (N.D.N.Y. 1988)). Here, even accepting Plaintiff's allegations that Defendant Goodard, and other Defendants, referred to Plaintiff as a "Jew Boy" as true, such claims, by themselves, do not rise to a constitutional level. *See id.;*

*Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir.1987) (holding that verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983). *See also, Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir.1996) (citing *Oltarzewski, supra* ) (holding verbal harassment generally does not violate the Eighth Amendment); *Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir.1985) (holding that name calling, where a prison guard called plaintiff an obscene name, is not a constitutional violation); *Ivey v. Wilson,* 832 F.2d 950, 953–55 (6th Cir. 1987) (holding that verbal abuse, harassment, or arbitrariness by prison officials toward an inmate does not qualify as punishment within the meaning of the Eighth Amendment); *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979) (holding that verbal harassment or abuse, where sheriff laughed at plaintiff and threatened to hang him, was not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983); *Ellingburg v. Lucas,* 518 F.2d 1196, 1197 (8th Cir.1975) (holding damages for defamation, resulting when defendant called plaintiff an obscene name, are not recoverable under 42 U.S.C. § 1983); *Huffman v. Fiola,* 850 F.Supp. 833, 837–38 (N.D.Cal.1994) (holding that allegations of harassment, embarrassment, and defamation are not cognizable under section 1983).[4] Therefore, Plaintiff's name-calling and verbal harassment claims are **DISMISSED WITH PREJUDICE.**

### C. *Failure to Follow Mail Procedures*

As stated above, Plaintiff contends Defendant Goodard discriminated against Plaintiff by calling Plaintiff anti-Semitic names while throwing Plaintiff's mail on the floor and kicking it under Plaintiff's cell door. (Am. Compl. at 1:1–5; Pl.'s Opp. at 5.) Plaintiff further contends that not only did Goodard fail to follow institutional mail procedures, but also falsified a report concerning the mail procedures in Plaintiff's 602 grievance response from Defendant Goodard. Even accepting as true Plaintiff's allegation that the report was falsified, courts have held that a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports. *Freeman v. Rideout,* 808 F.2d 949 (2d Cir.1986); *Hanrahan v. Lane,* 747 F.2d 1137 (7th Cir.1984).

◼ Plaintiff cites to *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), to support his contention that failure to follow institutional mail procedures is a violation of his constitutional rights. However, there the Supreme Court held that although the prisoner-plaintiff had been deprived of property under color of state law, he *failed* to state a claim for relief under section 1983 because there had been no contention the procedures themselves were inadequate, rather the deprivation had occurred as a result of failure of a state agent to follow a procedure. *Parratt,* 451 U.S. at 543–44, 101 S.Ct. 1908. Similarly, in the instant case, again taken by itself, Defendant Goodard's negligent or intentional failure to follow proper procedures does not constitute a constitutional deprivation. Accordingly, Plaintiff herein failed to state a claim for relief under section 1983, as he did not sufficiently allege a violation of the due process clause of the Fourteenth Amendment relating to mail procedures. *See id.* Therefore, the instant claim is **DISMISSED WITH PREJUDICE.**

### D. *Discrimination*

As discussed in Parts III. B and C, above, Plaintiff alleges that on March 21, 1994, Defendant Goodard kicked his mail under the door and verbally abused him with a religious epitaph. Thereby, Plaintiff alleges Defendant Goodard, and others, discriminated against him on the basis of his race and/or religion. On March 28, 1994, Plaintiff claims C/O Scott ordered Plaintiff to lock up and cease acting as a porter, stating, "just lock your bitch as [sic] up," Buckley. (Am.Compl. at 2.) Plaintiff claims that he was the only black second watch building porter, and that other porters were not required to lock up.

---

**4.** It should be noted that certain courts apply greater scrutiny when the verbal abuse or harassment is a reflection of racism or bigotry. *See Santiago v. Miles,* 774 F.Supp. 775, 778 (W.D.N.Y.1991). Nonetheless, there is no authority that name-calling alone states a cause of action under § 1983. However, evidence of racial slurs and/or verbal abuse combined with evidence of disparate treatment or violation of fundamental rights could be enough to support a claim for discrimination. *See* discussion *infra* Part III. D.

*Id.* On March 30, 1994, C/O Scott allegedly said to Plaintiff, "No work for you, Jewboy." (Am.Compl. at 4; Pl.'s Dep. Tr. 37:7–21.) Plaintiff again states he was the only black porter. (Pl.'s Dep. Tr. 27:9.) Plaintiff claims that on that date, other porters were released for work. (Pl.'s Dep. Tr. 40:9–41:6.) On March 31, 1994, Plaintiff claims he served both Scott and Variz with copies of a citizens complaint he filed against them. (Am.Compl. p. 4–5; Pl.'s Dep. Tr. 44:24–45:6.) After serving the two officers, Plaintiff claims he went to the chapel where he was confronted by C/O Scott who stated, "You Jew Mother Fucker, I got you now." (Am.Compl. p. 5.) During the incident, C/O Variz allegedly aimed a rifle at Plaintiff, and Plaintiff's prayer shawl was torn. (Am.Compl. at 5; Pl.'s Dep. Tr. 45:7–26.) Plaintiff filed a citizen's complaint over the March 31, 1994 incident. (Am.Compl. at 5–6.) Plaintiff claims that on April 7, 1994, C/O Scott ordered Plaintiff to lock up and not serve lunch to the other inmates, which is his porter duties, allegedly because Plaintiff did not have a prison payroll number.[5] (Pl.'s Dep. Tr. 54:10–55:12.) Plaintiff alleges Defendant Ricks refused to pick up his laundry on May 11, 1994, on the basis of Plaintiff's race and religion because Ricks called Plaintiff a "trouble maker" and a "crazy nigger."

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Shaw v. Reno,* 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *see also, Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Bell v.*

*Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Conclusory allegations of racial discrimination are insufficient to withstand a motion for summary judgment, unless they are supported by facts that may prove invidious discriminatory intent or purpose. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). " 'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). While the ultimate burden of proving intentional racial discrimination rests with the plaintiff, *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), discriminatory intent or purpose may be proved by direct or indirect evidence. *Arlington Heights,* 429 U.S. at 266, 97 S.Ct. 555; *Lowe v. City of Monrovia,* 775 F.2d 998, 1010 (9th Cir.1985).

Under the equal protection clause, strict scrutiny applies to governmental action which discriminates against a suspect class or which interferes with an individual's fundamental rights based on race or religion. *Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 457–58, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988). In the present case, Plaintiff contends that Defendants treated him differently from the general population in the handling of his mail and laundry and work assignments due to Defendants' racial or religious bias. Here, Plaintiff's allegations of discrimination relate to his being Jewish and an African–American, and as such strict scrutiny would normally apply. *See id.* However, in reviewing alleged in-

---

**5.** Plaintiff also alleges that on April 11, 1994, his head was intentionally held trapped in his cell door by C/O Bender. Although the Second Amended Complaint does allege the act was intentional, it does not specifically allege this as an act of racial discrimination. Nonetheless, Plain-

tiff asserts in a Declaration to his Opposition to Defendants' Motion for Summary Judgment that he overheard Bender telling Variz that Bender "didn't like Jews." Pl.'s Opp.Ex. C ¶ 6. The "cell-door" incident is treated *infra* Part III. G, pp. 16–18.

fringements of prisoners' constitutional rights, the test announced by the Supreme Court in *Turner v. Safley* applies; that is, "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).[6] *See Thompson v. City of Los Angeles*, 885 F.2d 1439, 1445 n. 4 (9th Cir.1989); *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir.1988). Therefore, Plaintiff must show that the treatment he has received is invidiously dissimilar to that received by other inmates, and that this treatment bears no rational relationship to a legitimate governmental purpose. *See City of Cleburne*, 473 U.S. at 439, 105 S.Ct. 3249; *Arlington Heights*, 429 U.S. at 265, 97 S.Ct. 555; *Turner*, 482 U.S. at 89, 107 S.Ct. 2254; *Thompson*, 885 F.2d at 1445 n. 4; *Michenfelder*, 860 F.2d at 331.

■ Although the incidents described above, by themselves, may not otherwise rise to a constitutional level, taken as a whole, the Court finds Plaintiff has produced sufficient facts to show there is a genuine issue for trial as to whether the treatment he received was invidiously dissimilar to that received by other non–African–American and/or non-Jewish inmates and as to whether the alleged discriminatory treatment bore a rational relationship to legitimate penological goals. The evidence Plaintiff has provided is based on his own allegations, declarations, and deposition testimony, and could be considered "probative evidence tending to support" his claims. *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir.1994). Further, the evidence has not been directly refuted by the Defendants with similar testimony. Rather, only Defendant Bender provided this Court an affidavit contradicting some of Plaintiff's allegations. Bender stated that closing the door was an accident, and that he was not prejudiced. Bender Decl. ¶ 6. Thus, there remain triable issues of fact. Therefore, because Plaintiff has provided sufficient evidence to preclude summary judgment, Defendants' Motion for Summary Judgment based on discrimination is **DENIED**.

### E. Deliberate Indifference to Thumb Injury

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). This principle "establish[ed] the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* The Supreme Court has noted that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.; West v. Atkins*, 487 U.S. 42, 54–55, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Therefore, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104, 97 S.Ct. 285.

■ Prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment if they are deliberately indifferent to the prisoner's serious medical needs. *Estelle*, 429 U.S. at 106, 97 S.Ct. 285; *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir.1989). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104, 97 S.Ct. 285. Thus, the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir.1992).

---

**6.** In announcing the standard applicable to prisoners' constitutional rights in *Turner*, the Supreme Court recognized that prisoners are protected against invidious racial discrimination by the Equal Protection Clause of the Fourteenth Amendment. 482 U.S. at 84, 107 S.Ct. 2254 (citing *Lee v. Washington*, 390 U.S. 333, 88 S.Ct.

994, 19 L.Ed.2d 1212 (1968) (per curiam)). Additionally, in *Jordan v. Gardner*, the Ninth Circuit noted that *Turner* had been applied to many constitutional rights, including equal protection claims, but not Eighth Amendment claims. 986 F.2d 1521, 1530 (9th Cir.1993).

■ "In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 302, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106, 97 S.Ct. 285; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.1990).

■ To determine deliberate indifference, the court must focus on the seriousness of the prisoner's medical needs and the nature of the defendants' response to those needs. *McGuckin*, 974 F.2d at 1059. Only if these elements are met, may a factfinder determine that the defendant was deliberately indifferent. *Id.* at 1060. Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989). Further, a finding that the defendants' neglect of a prisoner's condition was an "isolated occurrence," *Wood*, 900 F.2d at 1334, or an "isolated exception," *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986), to the defendants' overall course of treatment of the prisoner ordinarily militates against a finding of deliberate indifference. *McGuckin*, 974 F.2d at 1060.

Plaintiff contends that when he injured his thumb on March 28, 1994, Defendants denied him adequate medical care. However, Plaintiff did see a medical technician on March 28, 1994, and Plaintiff was able to work after he cut his thumb. (Defs.' Mem.P. & A.Ex. 2; Pl.'s Dep. Tr. 23–32:9; Am.Compl. at 2.) Medical records indicate Plaintiff cut his thumb on a tape dispenser, and that Plaintiff was given "bacitracin + bandaid". (Defs.' Mem.P. & A.Ex. 2.)

■ Plaintiff has failed to show Defendants' actions resulted in "unquestioned and serious deprivations of basic human needs" or deprive Plaintiff "of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Furthermore, Plaintiff has failed to show how any named Defendant exhibited "deliberate indifference" to any "serious medical need." *Estelle*, 429 U.S. at 104, 97 S.Ct. 285. Finally, the fact there may have been a delay in treatment to his injured thumb does not constitute a violation of the Eighth Amendment, as any such delay did not cause substantial harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir.1990). Therefore, Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff's denial of medical care claims.

## F. The Cell Door

■ Plaintiff alleges Defendant Bender is liable under § 1983 for closing Plaintiff's head in Plaintiff's cell door at 11:30 a.m., on April 11, 1994. (Am.Compl. at 6–7.) A prisoner may state a § 1983 claim against prison officials where the officials acted with "deliberate indifference" to the threat of serious harm or injury to an inmate. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986). As stated above, in order to show a constitutional violation under § 1983, Plaintiff must show that: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *rev'd on other grounds, Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir.1985) (en banc), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986); *Rinker v. Napa County*, 831 F.2d 829, 831 (9th Cir.1987). Plaintiff has raised a genuine issue of fact as to whether Defendant Bender disregarded Plaintiff's injury to such an extent that it amounted to deliberate indifference to Plaintiff's interest in personal security under the fourteenth amendment. *Wood v. Ostrander*, 879 F.2d 583 (1989), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990). *See Taylor v. Ledbetter*, 818 F.2d 791, 793, 795–97 (11th Cir.1987) (deliberate indifference to victim's well-being is more than negligence and supports section 1983 claim);

*Davidson v. O'Lone,* 752 F.2d 817, 828 (3rd Cir.1984) (en banc), *aff'd sub nom., Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *see also Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977) (prison officials' deliberate disregard of prisoner's serious illness or injury violates eighth amendment and is cognizable under section 1983).

In his declaration, Defendant Bender contends that his actions were accidental. Bender Decl. ¶¶ 6, 7. He further alleges Plaintiff had told him Plaintiff got his head stuck while trying to reach fruit that had fallen from his sack lunch. *Id.* at 6. Defendant Bender contends that because his actions were accidental and because Plaintiff alleges no facts to show that closing of the door on Plaintiff's head was intentional, that in view of *Daniels v. Williams,* which held that mere negligence or lack of due care by a state official does not trigger the protections of the Fourteenth Amendment and therefore does not state a claim under section 1983, Plaintiff's claim should be dismissed. 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). However, Plaintiff does allege that Bender "intentionally failed to follow the housing unit procedures," (Am.Compl. at 6:25–26), and alleges that despite his cries for help and "other inmates yelling," Bender did not open the cell door until noon, allegedly thirty minutes after the initial incident occurred. *Id.* at 7:1–5. Evidence of intent is rarely subject to direct proof; proof must be garnered through circumstantial evidence based on the conduct of the parties. This court finds that one reasonable inference from the facts as alleged by Plaintiff is that Defendant acted negligently and unintentionally. However, another equally reasonable inference is that Defendant Bender intentionally allowed Plaintiff's head to remain closed in the cell door with deliberate indifference to possible pain or injury to Plaintiff. Therefore, Defendant Bender's Motion for Summary Judgment on Plaintiff's claim relating to the cell door incident is **DENIED.**

### G. *Conspiracy*

As set forth above, in Part III. A, this Court finds that Plaintiff fails to offer any evidence to show the existence of a conspiracy; therefore, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's conspiracy claims. *Burns v. County of King,* 883 F.2d 819, 821 (9th Cir. 1989); *Uston v. Airport Casino, Inc.,* 564 F.2d 1216, 1217 (9th Cir.1977).

### H. *Retaliation*

■■■ The Constitution provides protections against "deliberate retaliation" by prison officials against an inmate's exercise of his right to petition for redress of grievances. *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989). Because retaliation by prison officials may chill an inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation. *Thomas v. Carpenter,* 881 F.2d 828, 830 (9th Cir.1989), *cert. denied,* 497 U.S. 1003, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990). However, there must be a causal connection between the allegedly retaliatory conduct and the action that purportedly provoked the retaliation. In fact, a plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act. *Soranno's Gasco,* 874 F.2d at 1314; *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Thus, in order to withstand a motion for summary judgment, a plaintiff suing prison officials pursuant to § 1983 for retaliation must create a triable issue of fact as to whether: (1) he was retaliated against for exercising his constitutional rights; and (2) the retaliatory action "does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni,* 31 F.3d 813, 815–16 (9th Cir.1994) (per curiam); *Palmer v. Sanderson,* 9 F.3d 1433, 1438 (9th Cir.1993); *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir.1988); *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). Further, in *Pratt v. Rowland,* 65 F.3d 802, 807 (1995), the Ninth Circuit concluded that retaliation claims should be evaluated in light of the general concerns expressed in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132

L.Ed.2d 418 (1995). In particular that courts should "afford appropriate deference and flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory. *Pratt,* 65 F.3d at 807 (citing *Sandin,* 115 S.Ct. at 2299).

▇ In the case at bar, Plaintiff has largely failed to show how any alleged retaliation was directly related to or caused by the exercise of a constitutional right. *Soranno's Gasco,* 874 F.2d at 1314. Nevertheless, after a review of the record, this Court finds that Plaintiff has submitted some evidence to support a link between the exercise of one constitutional right in particular, and an allegedly retaliatory action. *See Pratt v. Rowland,* 65 F.3d 802, 807–08 (9th Cir.1995).

On March 31, 1994, Plaintiff claims he served both Scott and Variz with copies of a citizens complaint he filed against them. (Am.Compl. p. 4–5; Pl.'s Dep. Tr. 44:24–45:6.) After serving the two officers, Plaintiff claims he went to the chapel where he was confronted by C/O Scott who stated, "You Jew Mother Fucker, I got you now." (Am.Compl. p. 5.) During the incident, C/O Variz allegedly aimed a rifle at Plaintiff, and Plaintiff's prayer shawl was torn. (Am. Compl. at 5; Pl.'s Dep. Tr. 45:7–26.) Plaintiff filed a citizen's complaint over the March 31, 1994 incident. (Am.Compl. at 5–6.) Plaintiff alleges that on April 7, 1994, shortly after the filing of his second complaint, C/O Scott ordered Plaintiff to lock-up and discontinue his porter's duties. (Pl.'s Dep. Tr. at 54:10–55:12.) Thus, because there is a constitutional right of access to the courts and government officials for redress of grievances, which extends to established prison grievance procedures, *see O'Keefe v. Van Boening,* 82 F.3d 322, 325 (9th Cir.1996); *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir.1995), Plaintiff has submitted probative evidence, related to these incidents alone, to show that his submission of grievances was a substantial and motivating factor in the decision of Defendant Scott (and Variz) to act as

they allegedly did on March 31, 1994, and/or April 7, 1994. Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment on Plaintiff's retaliation claims.[7]

### I. *Qualified Immunity*

▇ The qualified immunity standard requires a two-step analysis: (1) Was the law governing the official's conduct clearly established?; and (2) Under that law, could a reasonable officer have believed the conduct was lawful? *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993). However, if an Eighth or Fourteenth Amendment violation is found, there is no defense of qualified immunity available. *Albers v. Whitley,* 743 F.2d 1372, 1376 (9th Cir.1984), *rev'd on other grounds,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *see also, Robins v. Meecham,* 60 F.3d 1436, 1441 (9th Cir.1995). Additionally, the law stating that prisoners may not be subjected to invidious racial discrimination, *Lee v. Washington,* 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968) (per curiam), was clearly established at the time of Plaintiff's allegations.

▇ Here, because the Court has found a triable issue of fact relating to whether Defendants Scott, Ricks, Goodard, and Variz' conduct constituted a violation of Plaintiff's right to Equal Protection, and whether Defendant Bender's conduct rose to the level of deliberate indifference, Defendants' Motion for Summary Judgment based on qualified immunity is **DENIED.**

### IV. *Conclusion*

Defendants' Motion to Dismiss and Motions for Summary Judgment are **GRANTED IN PART** and **DENIED IN PART.** As stated above, Defendants Gomez and Prunty are hereby **DISMISSED WITH PREJUDICE.** Surviving Defendants include Defendants Bender, Scott, Ricks, Variz,[8] and Goodard. Surviving claims include those re-

---

**7.** It is noted that these same incidents are referenced in the discussion regarding Plaintiff's claim of invidious discrimination. Ultimately, it may be for the trier of fact to determine whether these incidents, if they are found to have occurred, were principally motivated by racial or religious animus or a desire to retaliate, or neither, or both.

**8.** As noted above, the Court record does not show Defendant Variz ever being served.

lating to discrimination, retaliation, and the cell door incident, as stated above.

**IT IS SO ORDERED.**