**Glenn S. PAGE, Plaintiff,**

v.

**Michael J. NORVELL, Defendant.**

**Nos. CIV. 96–1511TC, CIV. 96–1702–ST.**

United States District Court,
D. Oregon.

Dec. 21, 2000.

Glenn S. Page, Eastern Oregon Correctional Institution, Pendleton, OR, for Plaintiff.

Jan Peter Londahl, Department of Justice Administration, Salem, OR, for Defendant.

OPINION AND ORDER

AIKEN, District Judge.

Magistrate Judge Coffin filed his Findings and Recommendation on October 18, 2000. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When a party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Business Machines*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Plaintiff has timely filed objections. I have, therefore, given the file of this case a *de novo* review. I do not adopt the Magistrate's Findings and Recommendation (doc. 114), and instead deny defendant's amended motion for summary judgment (doc. 80), and original motion for summary judgment (doc. 33).

*STANDARDS*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

tled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Electrical,* 809 F.2d at 630.

### DISCUSSION

Plaintiff, an inmate represented by counsel, brings this action pursuant to 42 U.S.C. § 1983. He alleges a claim for violation of his Eighth Amendment rights arising from defendant's alleged deliberate indifference to his medical needs. The Magistrate recommended granting defendant's motion for summary judgment finding that no reasonable jury could find that: (1) the defendant caused the lack of a medication review; (2) the defendant acted purposefully with respect to plaintiff's lack of a medication review; and (3) the lack of a medication review harmed plaintiff. I

disagree and find that at least, when considering all facts in the light most favorable to the plaintiff, a genuine issue of material fact exists as to these issues.

Briefly, the background of this case concerns plaintiff, an inmate at Eastern Oregon Correctional Institution (EOCI), who was seeing Bonnie Kugel for treatment of his mental health disorder at the prison. Kugel last saw the plaintiff on July 11, 1996, and prescribed three drugs for the plaintiff, including Lithium, a new drug for plaintiff, to treat a diagnosis of Bipolar Disorder, which is an Axis I mental disorder. Kugel noted that she would see the plaintiff in three weeks, however, the follow-up appointment never occurred as Kugel went on vacation and then subsequently resigned.

On August 21, 1996, plaintiff met for the first time with Granger Brown of EOCI's Counseling Treatment Services (CTS). The purpose of the visit was to determine who would handle his case while Kugel was out. During the visit, defendant Norvell, the manager of CTS, entered the room. Plaintiff was angry and openly hostile, standing and arguing with Brown. When the plaintiff refused to calm down as instructed by Norvell, and then directed profanity at Norvell, Norvell ordered plaintiff out of the room and escorted him to the East Lieutenant's office. Plaintiff was eventually sanctioned for use of abusive speech.

Based on Norvell's encounter with plaintiff, two days later on August 23, 1996, Norvell sent plaintiff a memo stating in part:

I am hereby removing you from scheduled mental health treatment. My decision to remove you from scheduled mental health treatment is based upon clinical findings that suggest you are highly antisocial and do not suffer from an Axis I mental disorder.

. . .

You are hereby ordered to direct any and all written or verbal communication for mental health services to me or Health Services Nursing Staff. You are further ordered to NOT contact Ms. Kugel, Mr. Brown, Dr. Baxter or Ms. Peterson with requests for mental health services. I am now your primary mental health worker and will decide the level of service you require. If you violate this order I will hold you accountable for disobedience of an order as provided by the DOC disciplinary code.

Plaintiff's Ex. I.

Despite Norvell's opinion that plaintiff did not suffer from an Axis I disorder, plaintiff continued to receive the psychotropic medication used to treat Axis I disorders prescribed to him by Kugel on July 11, 1996. Nurse Cathy Fuller extended his prescription twice. Fuller is not part of the CTS staff and did not meet with or evaluate plaintiff prior to refilling his prescriptions. On October 21, 1996, five days after plaintiff filed the lawsuit at bar, Dr. Baxter refilled plaintiff's prescriptions a third time and also scheduled a "medication review" for November 7, 1996.

The Ninth Circuit instructs that a determination of deliberate indifference to medical needs involves an examination to two elements: the seriousness of a prisoner's medical need and the nature of defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059–61 (9th Cir.1992) (*overruled on other grounds*, *WMX Techs v. Miller*, 104 F.3d 1133 (9th Cir.1997)). The Magistrate assumed, and the defendant does not dispute, that plaintiff's medical need was sufficiently serious due to his mental health disorder and the anxiety he allegedly suffered due to a lack of medication review. F&R, p. 9–10, Defendant's Memo in Support of Summary Judgment, p. 6. I agree. Therefore, the focus is on the defendant's response to

plaintiff's need and whether that response rises to the level of "deliberate indifference."

There are certain minimum requirements before deliberate indifference can be established. First, there must be a purposeful act or failure to act on the part of the defendant. . . . . A defendant must purposefully ignore or fail to respond to prisoner's pain or possible medical need in order for deliberate indifference to be established.

*McGuckin*, 974 F.2d at 1060 (internal citations omitted).

Deliberate indifference may be manifested when prison officials deny, delay or intentionally interfere with medical treatment. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.1988). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.* Further, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* The requirement of deliberate indifference is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because "[t]he State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns." *Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

The Magistrate found, as a matter of law, that "plaintiff's delay in receiving medication review was not caused by defendant's memo, but arose from a combination of Kugel's resignation and faulty

monitoring and miscommunication by and between CTS and EOCI's Health Services." F&R, p. 10 (citations omitted). I disagree and find that when the facts are considered in a light most favorable to the plaintiff, a genuine issue of material fact exists as to whether a reasonable jury could find that the defendant caused the plaintiff to not receive a medication review.

There is evidence in the record that supports plaintiff's contention that Norvell intentionally "downgraded" plaintiff's mental health diagnosis from an Axis I disorder to an Axis II disorder after meeting with him for less than two minutes. Plaintiff's Ex. E (Norvell Aff'd), p. 3; Ex. F (Norvell Dep.), p. 35, 43. Norvell's witness, Dr. Baxter, supports plaintiff's contention that Norvell may have purposefully misdiagnosed plaintiff's mental illness. Baxter testified that, "we don't make rapid diagnosis on people. You have to have an observation of their behaviors, you have to have some historical background on them." Plaintiff's Ex. B (Baxter Dep.), p. 11–12. Baxter also testified that Norvell's diagnosis was "made without proper information." *Id.*, p. 25. Brown and Kugel agree with Dr. Baxter that Norvell could not have properly diagnosed plaintiff after such a brief encounter. Plaintiff's Ex. G (Brown Dep.), p. 17; Ex. C (Kugel Dep.), p. 28.

Norvell admits that he did not consult plaintiff's medical record, and that he met with plaintiff for approximately two minutes when plaintiff was hostile and angry. Based on that encounter, Norvell decided that plaintiff did not suffer from an Axis I mental health disorder, despite the fact that plaintiff was currently receiving three different types of medication specifically prescribed to treat an Axis I disorder. Norvell Dep., p. 44. Concurrent with the change in diagnosis, Norvell ordered plaintiff "removed" from scheduled mental health treatment. Norvell's diagnosis revision was a decision that was "based upon clinical findings that suggest [plaintiff] is highly antisocial and [does] not suffer from an Axis I disorder." Plaintiff's Ex. I (Norvell's August 23, 1996, Memo to plaintiff). The record, however, does not contain any evidence in support of Norvell's "clinical findings," nor does the defendant present any such evidence to the court.

Moreover, Dr. Baxter, Brown, Kugel and Dr. Goranson, a psychiatrist who provided an affidavit on behalf of plaintiff, all agree that it is not possible to diagnose a patient as having (or not having) an Axis I disorder based on an encounter lasting two minutes. Ex. B (Baxter Dep.), p. 11, 25; Ex. G (Brown Dep.)., p. 17; Ex. C (Kugel Dep.), p. 28; and Ex. D (Goranson Aff'd), p. 2.

As the manager of CTS, Norvell is responsible for monitoring EOCI's prisoners' mental health treatment. Norvell stated that, as the case manager for that population, he prioritizes the prisoner's mental health treatment. Ex. E (Norvell Aff'd), p. 1, 4, 6. Norvell further stated that "[t]he level of mental health treatment provided to inmates is left to my discretion." *Id.* Significantly, Dr. Baxter confirmed that Norvell controls the scheduling of mental health consultations for patients such as the plaintiff. Specifically, Dr. Baxter confirmed that, "in the past inmates would send kites directly to me and I would schedule them .... now all of the consultations come through the CTS service." Plaintiff's Ex. B (Baxter Dep.), p. 2.

Viewing Norvell's memo to plaintiff dictating that he alone would decide the level of mental health services plaintiff was to receive, in combination with Norvell's authority as the manager of CTS, which included deciding whether or not to send an inmate to Dr. Baxter for medical services, I find that a reasonable jury could con-

clude that Norvell was responsible for plaintiff's removal from medication review. Courts have held that, "a defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060. Norvell knew that the plaintiff was recently prescribed three different medications for an Axis I mental health disorder, and he knew that Kugel was scheduled to follow the plaintiff and manage his medications (hence, the meeting with Granger Brown to determine who would replace Kugel as plaintiff's mental health professional). Drawing all inferences from the facts in a light most favorable to the plaintiff, a reasonable jury could conclude that Norvell either ignored or failed to respond to plaintiff's medical needs when he wrote the memo to plaintiff removing him from scheduled mental health treatment, changing his mental health diagnosis from an Axis I disorder, and warning plaintiff not to contact any other mental health care providers because he alone would manage plaintiff's mental health care.

■ When a claimed Eighth Amendment violation results from a delay in medical treatment, the delay must cause some sort of harm. *Id.* "However, a finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary." *Id.; see also, Hudson*, 503 U.S. at 8–9, 112 S.Ct. 995 (rejecting "significant injury" requirement and noting that the Constitution is violated "whether or not significant injury is evident"). "[N]either a finding that a defendant's actions are egregious or that they resulted in significant injury to a prisoner is required in order to establish a violation of the prisoner's federal constitutional rights and create a cause of action under § 1983." *McGuckin*, 974 F.2d at 1060 (internal citations omitted).

Following is plaintiff's description of the suffering he endured as the result of Norvell's actions:

> I was concerned that the Lithium and other psychotropic medications I was taking were not having the desired effect. A lot of times during the day I would feel my medication wear off. It would feel like the bottom of the floor would fall out from underneath me. I was not able to call Mr. Norvell or any other CTS professional for the reasons stated above. I was extremely anxious and overwrought due to this situation. I desperately wanted to talk to a qualified mental health care professional, but because of Mr. Norvell's actions I was not able to do so. When my medication wore off, it would feel like my world was falling apart with no hope or insight of obtaining help.

Plaintiff's Ex. H (Page Aff'd), p. 5.

The Magistrate found that plaintiff had not shown "with medical evidence that the lack of medication review was harmful while defendant has shown with medical evidence that it was not harmful." F&R, p. 11. The proof of "no harm," relied upon by the Magistrate, was based on Dr. Baxter's statement as follows:

> I did not feel that Inmate Page was in bad shape the first time I saw him on November 7, 1996. Based on my initial conversation with him, I made only a minor change to his medication by adding a 300 mg. noontime dosage of Lithium Carbonate in addition to the 900 mg. dosage he was already receiving at bedtime[.]

F&R, p. 5.

Baxter's statement merely shows that plaintiff was not in "bad shape" when he met with plaintiff. Baxter acknowledged that he could not speculate on plaintiff's medical condition prior to the date he saw him on November 7, 1996. Plaintiff's Ex.

B (Baxter Dep.), p. 40–41. Further, and significantly, the fact that Dr. Baxter increased plaintiff's Lithium dosage by an additional one-third of his current dose lends credibility to plaintiff's complaints that he was undermedicated and experienced symptoms as his medication "wore off." I find that a genuine issue of material fact exists as to the seriousness of plaintiff's psychological harm.

## CONCLUSION

The Findings and Recommendation (doc. 114) are not adopted. Defendant's amended motion for summary judgment (doc. 80) and original motion for summary judgment (doc. 33) are denied.

IT IS SO ORDERED.