Raymond E. KENNEY, Plaintiff,

v.

Dr. Sisar PADERES, M.D., Dr. Alan Taniguchi, M.D., Dr. Terrence Allen, M.D., Dr. Michael Lauer, M.D., Dr. Kenneth Zienkiewicz, M.D., and John Does 2–10, Defendants.

No. CIV.00–00315 BMK.

United States District Court, D. Hawai'i.

Aug. 21, 2002.

Max Nakata Garcia, Jack F. Schweigert, Honolulu, HI, for plaintiff.

Marie C.L. Laderta, Office of Atty. Gen., Honolulu, HI, for State of Hawaii, defendant.

Kendall J. Moser, Marie C.L. Laderta, Cindy S. Inouye, Office of Atty. Gen., Honolulu, HI, for Dr. Sisar Paderas, defendants.

Kendall J. Moser, Cindy S. Inouye, Office of Atty. Gen., Honolulu, HI, for De. Alan Taniguchi, Dr. Terrance Allen, Dr. Michael Lauer, defendants.

Cindy S. Inouye, Office of Atty. Gen., Honolulu, HI, for Kenneth Zienkiewicz, M.D., defendant.

### AMENDED ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KURREN, United States Magistrate Judge.

Before the Court is Defendants Dr. Sisar Paderes, Dr. Alan Taniguchi, Dr. Terrence Allen, Dr. Michael Lauer, and Dr. Kenneth Zienkiewicz's (collectively "Defendants" or "prison doctors") Motion for Summary Judgment. The matter came on for hearing on July 8, 2002. Appearing for Plaintiff was Jack Schweigert, Esq. Appearing on behalf of Defendants was Kendall J. Moser, Esq. The Court hereby DENIES Defendants' Motion. Questions of fact exist as to whether the prison doctors acted with deliberate indifference to Plaintiff Raymond E. Kenney's ("Kenney") serious medical needs.

### PROCEDURAL POSTURE

This case arises out of the prison doctors' alleged deliberate indifference to Kenney's medical needs while he was incarcerated at the Halawa Correctional Facility from December 24, 1996 through Au-

gust 11, 1997 and from December 24, 1997 to March 5, 1998. Kenney suffers from a neurological disorder which causes him to experience tremors. To control the disorder, he insists that he must take the medication lorazepam.[1] The prison doctors refused to prescribe lorazepam, an act which Kenney alleges violated his constitutional rights.

Kenney's complaint was filed first in state court against the State of Hawaii and the prison doctors in their official and individual capacities. The complaint alleged that the prison doctors' refusal to prescribe lorazepam amounted to deliberate indifference and cruel and unusual punishment in violation of 28 U.S.C. § 1983. The case was subsequently removed to federal court, and came before the Honorable Helen Gillmor, United States District Judge. Upon a motion to dismiss filed by the defendants, Judge Gillmor dismissed the case against the State of Hawaii and the prison doctors in their official capacities, and remanded Kenney's state law claims to state court. Kenney's Section 1983 claims against the prison doctors in their individual capacities remained in federal court. Pursuant to consent of the parties, this claim is now before this Court.

On March 13, 2002, the prison doctors filed the instant motion for summary judgment, arguing that their actions did not constitute deliberate indifference to Kenney's medical needs. Kenney opposed the motion on June 3, 2002, to which the prison doctors replied on June 7, 2002.

*STANDARD OF REVIEW*

Under Federal Rule of Civil Procedure ("FRCP") 56(c), summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. The moving party has the initial burden of

"identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec.,* 809 F.2d at 630; FRCP 56(e). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Intel Corp. v. Hartford Accident & Indemnity Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec.,* 809 F.2d at 630; *Blue Ocean Preservation Soc. v. Watkins,* 754 F.Supp. 1450, 1455 (D.Haw.1991); FRCP 56(e). If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *Lujan v. Natal Wildlife Fed'n,* 497 U.S. 871, 884, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); FRCP 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Citadel Holding Corp. v. Roven,* 26 F.3d

---

1. The benzodiazepine called "lorazepam" (brand name Ativan) is listed as a Schedule IV Controlled Substance under both federal and state law.

960, 964 (9th Cir.1994); *Blue Ocean,* 754 F.Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.,* 809 F.2d at 631 (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Inferences must be drawn in favor of the nonmoving party. *T.W. Elec.,* 809 F.2d at 631. However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law. *Id.* at 631–32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *Bator v. State of Hawaii,* 39 F.3d 1021, 1026 (9th Cir.1994) (citing *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988)).

## DISCUSSION

Kenney argues that the prison doctors were deliberately indifferent to his serious need of the medication lorazepam to control his tremors.

Deliberate indifference to serious medical needs presents a cognizable claim for violation of the Eighth Amendment proscription against cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251; *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds, WMX Techs, Inc. v. Miller,* 104 F.3d 1133 (9th Cir.

1997). The Ninth Circuit has provided a two-part test to determine if defendants were deliberately indifferent to a plaintiff's serious medical needs. *McGuckin,* 974 F.2d at 1059. First, "the seriousness of the prisoner's medical need" must be examined; second, "the nature of the defendant's response to that need" must be determined. *Id.*

The first factor is the seriousness of the prisoner's medical need. The prisoner's medical need is "serious" if failure to treat the prisoner's condition could result in further significant or "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle,* 429 U.S. at 104, 97 S.Ct. 285). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *See, e.g., Wood v. Housewright,* 900 F.2d 1332, 1337–41 (9th Cir.1990); *Hunt v. Dental Dept.,* 865 F.2d 198, 200–01 (9th Cir.1989). *McGuckin,* 974 F.2d at 1059–60.

The second factor is the nature of the defendant's response to that need. Deliberate indifference to an inmate's serious medical needs may be manifested in two ways: either when prison officials deny, delay or intentionally interfere with medical treatment, or by the way that prison physicians provide medical care. *Id.* at 1060; *Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir.1988). In either case, however, the indifference to the inmate's medical needs must be substantial; inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and medical personnel does not rise to the level of a constitutional violation. *Franklin v. State of Oregon,*

*State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir.1981). Moreover, when a claim alleges a delay of medical treatment, the inmate must show that the delay was harmful. *See McGuckin*, 974 F.2d at 1060. Kenney maintains that his medical need is serious and that each prison doctor defendant denied, delayed, or intentionally interfered with his medical treatment.

The relevant history is as follows.

Plaintiff was transferred to Maui Community Correctional Center ("MCCC") from Maricopa County Jail in Phoenix on October 9, 1996. Kenney's illness history listed a nerve disorder. His medical records from this date indicate that his hands were "shaking/tremors", and that Kenney declared, "it's because I don't have the Lorazepam." Kenney told the staff that he had been treated at Kaiser and that his medications included lorazepam. The same day, the MCCC nurse called Kaiser for a list of medications prescribed to Kenney, which Kaiser faxed to MCCC. The list did not contain lorazepam. The list was faxed to Dr. Alan Taniguchi the following day, who ordered medications for Kenney, but not lorazepam.

The following day, Kenney was released from MCCC. He was hospitalized at Straub Hospital for angina from October 17–19, 1996, where he was given six different medications, including lorazepam.

On October 24, 1996, Kenney returned to MCCC where he was seen by Dr. Terrance Allen. Dr. Allen received the list of medications prescribed by Straub and approved the continuation of all but lorazepam. On October 25, 1996, medications including lorazepam were obtained from Kenney's attorney and "counted and placed in property." Dr. Allen denied Kenney lorazepam on three subsequent occasions, noting that Kenney exhibited "no distress" and "no significant tremor at rest or intention."

Meanwhile, Kenney was transferred from MCCC to the Halawa Correctional Facility ("HCF") on November 27, 1996.

On March 18, 1997, Kenney reported he was suffering from tremors. He again complained of tremors on April 2, 1997, and again requested lorazepam. The medical evaluation on this date noted a history of being prescribed lorazepam, and the remark that Kenney had been off lorazepam since incarceration. On April 7, 1997, Kenney was examined by Dr. Kenneth Zienkiewicz. Dr. Zienkiewicz observed "mild resting and intention tremor of hands" which he assessed as "benign essential tremor" and noted that "lorazepam is not a medical necessity for this condition" as "[t]he tremor is not interfering with activities of daily life."

In August 1997, Kenney was extradited to Colorado, where he received a court order for lorazepam.

On December 24, 1997, he returned to HCF. Lorazepam was listed on Kenney's transfer form. A call was placed to Dr. Michael Lauer regarding Plaintiff's medications, and Dr. Lauer ordered that all medications but lorazepam be continued. On December 27, 1997, Kenney complained to HCF medical staff that his medications were "all wrong" and that he was supposed to be on lorazepam by court order.

On January 7, 1998, Kenney was examined by Dr. Paderes. Dr. Paderes noted that Kenney had a Colorado court order for lorazepam. Clinical notes from January 1998 indicate that "we are not obligated to follow court order."

Kenney was paroled from HCF on March 5, 1998. He never received lorazepam while incarcerated in Hawaii.

### A. *Seriousness of Kenney's Medical Needs.*

The first factor of the Ninth Circuit's two-part test set forth in *McGuckin* is the

seriousness of Kenney's medical need. Viewing the facts in the light most favorable to Kenney, an inference may be drawn that Kenney's medical need is serious. Kenney suffers from a neurological disorder which causes him to experience tremors. (*See* Letter dated July 10, 2001 from Dr. Mauro to Jack Schweigert, Esq., at 2). Dr. Zienkiewicz diagnosed Kenney with a benign essential tremor, which meant that Kenney's tremors were present, detectable, and observable. (Zienkiewicz Depo. at 11:10–22). Furthermore, neurologist Anthony Mauro, M.D., Kenney's medical expert, states the following:

> It is well documented that during incarceration in the State of Hawaii, tremor was evident, and the same tremor was found both prior to and subsequent to State of Hawaii incarceration to be sufficient to interfere with daily activities, such that it is absolutely certain that the tremor was sufficient to interfere with daily activities during incarceration. Further, it is Mr. Kenney's contention that tremor interfered with activities during his incarceration.

(*See* Letter dated April 15, 2002 from Dr. Mauro to Jack Schweigert, Esq., at 2; *See also* Letter dated January 26, 2001 from Dr. Mauro to Jack Schweigert, Esq. at 4, 6).

### B. *Defendants' Response to Kenney's Medical Needs.*

The second-factor of the Ninth Circuit's two-part test explained in *McGuckin* requires an analysis of the prison doctors' response to Kenney's medical needs. The prison doctors contend that a difference of opinion or mere negligence is insufficient to establish a claim for deliberate indifference to serious medical needs. *See Hutchinson,* 838 F.2d at 394 ("mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights"); *Franklin,* 662 F.2d at 1344 ("A difference of opinion between prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim"). However, the medical analysis performed by Dr. Mauro, together with the prison doctors' depositions, calls into question the manner in which each of the prison doctors provided medical care to Kenney.

### 1. *Dr. Taniguchi*

Dr. Taniguchi was the first prison doctor to refuse prescribing lorazepam to Kenney. He never met Kenney in person, but was aware of his complaints of tremor. He did not prescribe lorazepam, however, because of concern within the prison of abuse of drugs of that class, and acknowledged an "unwritten policy" against prescribing the medication. (Taniguchi Depo. at 24:9–13; 25:6–20.)

According to Dr. Mauro, Taniguchi's decision to refuse lorazepam was potentially dangerous to Kenney's health:

> Given the recognized and well-known risks of acute withdrawal from benzodiazepines (lorazepam), including anxiety, agitation, unstable blood pressure, and withdrawal seizures, it was medically inappropriate, in my opinion, for this medication to have been withheld beginning 10/9/96.... it would have been medically appropriate, in my opinion, to prescribe the lorazepam at the doses indicated by Mr. Kenney, awaiting subsequent confirmation or refutation, rather than to risk precipitating an acute withdrawal state.... Again, in a situation of uncertainty, it is medically inappropriate to discontinue the medication awaiting confirmation of prescription, as that approach risks inducing an acute withdrawal complication.

(*See* Letter dated January 26, 2001 from Dr. Mauro to Jack Schweigert, Esq., at 4). Dr. Taniguchi himself acknowledges that

the sudden cessation of a benzodiazepine can result in death. (Taniguchi Depo. at 31:16–25.)

### 2. *Dr. Allen*

Similarly, Dr. Allen refused Kenney lorazepam although he was aware that Kenney had been prescribed the drug. Dr. Allen too may have believed there to be a prison policy against or reluctance for prescribing drugs of that class. (Allen Depo. at 34:9–20). As set forth above, such refusal was potentially fatal to Kenney.

### 3. *Dr. Zienkiewicz*

On April 7, 1997, Dr. Zienkiewicz examined Kenney and noticed tremor in his hands. Dr. Zienkiewicz refused to prescribe lorazepam, however, noting that the drug was not a medical necessity for Kenney's condition as the tremor did not interfere with activities of daily life. However, Kenney's medical records reveal that he had dropped 23 pounds since his incarceration. Kenney alleges that his weight loss was due to his inability to eat as a result of trembling hands. As previously referenced, Dr. Mauro opines that tremor was evident throughout Kenney's incarceration and the tremor was sufficient to interfere with Kenney's daily activities. (*See* Letter dated April 15, 2002 from Dr. Mauro to Jack Schweigert, Esq., at 2).

### 4. *Dr. Lauer*

In August 1997, Kenney was extradited to Colorado where he received a court order for lorazepam. Upon return to HCF, Kenney's transfer form listed the medication lorazepam. Despite the prescription, Dr. Lauer chose to continue all drugs but lorazepam. As described above, such a sudden cessation of lorazepam is potentially life-threatening to Kenney. Despite the risk, Dr. Lauer never examined, spoke to, or interacted with Kenney in any manner. (Lauer Depo. at 13:7–13.)

### 5. *Dr. Paderes*

After further complaints regarding his health, Kenney was examined by Dr. Paderes on January 7, 1998, who noted that Kenney had a court order from Colorado for lorazepam. Dr. Paderes indicated in his notes that he planned on obtaining permission to use lorazepam for Kenney's tremors. The same day, HCF medical staff contacted the State of Hawaii Attorney General's Office "re: if we're required to follow court order from Colorado." On January 14, 1998, Dr. Paderes wrote Kenney a letter stating that "the out-of-state court order . . . wasn't adequate to justify using Lorazepam . . . I will not prescribe Lorazepam for you." In his deposition, Dr. Paderes acknowledges an unwritten HCF policy against prescribing lorazepam.

Kenney was paroled from HCF on March 5, 1998. Kenney never received a prescription for lorazepam while incarcerated in Hawaii.

Viewing the facts in the light most favorable to Kenney, the actions taken by each prison doctor could amount to a substantial and deliberate indifference to Kenney's serious medical need for the drug lorazepam—a drug prescribed by all doctors but those in the Hawaii state prison system. Indeed, the facts paint a picture of what could amount to a systematic and intentional pattern of denial, given that (1) while at MCCC and HCF Kenney manifested symptoms of his disorder and repeatedly requested that he be given lorazepam; (2) lorazepam is an acknowledged and standard treatment for Kenney's disorder; (3) there is compelling evidence of an "unwritten policy" in the Hawaii state prison system against prescribing the drug; and (4) Kenney was consistently prescribed lorazepam by all but Hawaii prison doctors. Thus, whether a prison official—here each prison doctor—had the requisite knowledge of Kenney's serious

medical need, such as to support an alleged Eighth Amendment violation based on deliberate indifference to that need, is a question of fact, and a fact finder could conclude here that each prison doctor, alone or in concert, knew of Kenney's serious medical need but deliberately ignored it, such that his actions rose to a level beyond mere negligence, inadvertence, or differences in judgment between himself and Kenney. Accordingly, Defendants' Motion for Summary Judgment is DENIED as to each prison doctor.

*CONCLUSION*

For the reasons stated above, Defendants' Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.